## WILLIAM DINNING *et al.*

### *v.*

## THE PHŒNIX INSURANCE COMPANY OF BROOKLYN.

INSURANCE—*bill to compel issuing of policy not sustained without proof of contract, and payment of premium.* On a bill in chancery to compel an insurance company to issue a policy of insurance, the complainant must show a contract to that effect made with a duly authorized agent of the company, or one held out to the public as having authority, and this by a preponderance of evidence. If the whole proof shows that the transactions were but the preliminaries to making a contract of insurance, and no premium paid or credit given, the bill will be properly dismissed.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a bill in chancery, filed by William Dinning and Fred. R. Sears against the Phœnix Insurance Company of Brooklyn, New York. The object of the bill and the facts of the case appear in the opinion of the court.

Messrs. LAWRENCE, WINSTON, CAMPBELL and LAWRENCE, for the plaintiffs in error.

Mr. IRA W. BULL, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed by plaintiffs in error, to compel the defendant in error to issue a policy of insurance in pursuance of an alleged verbal contract between the parties. The bill alleged, in substance, that one Nathan Whitman, an insurance broker, as agent of complainant Dinning, during the week preceding the Chicago fire of 1871, entered into negotiations with one David Lookinland, as agent of the Phœnix Insurance Company, for insurance upon certain property of Dinning, known as the Steele Block, in the city of Chicago; that on Saturday, Oct. 7th, the negotiations were closed by a verbal contract whereby the company agreed to insure the block for $5000 from Oct. 8th, 1871, to Oct. 8th, 1872, at one per cent premium, to be paid on demand; policy to be written in due course of business; that on the 9th of Oct., 1871, the block was burned and became a total loss; that the value of the block was $50,000, and the total insurance $47,- 500; that the premium had been tendered and refused, and the company had refused to deliver the policy or adjust the loss, although full proofs had been made.

The answer set up that Lookinland was not the agent of the company, and was not authorized to make contracts for insurance, and that he did not make the alleged contract of insurance.

The court below, on final hearing, dismissed the bill, and the complainants prosecute this writ of error.

The testimony shows that Robert S. Critchell was the sole and only authorized agent of defendant, in Chicago, to issue policies of insurance or accept risks. Lookinland was not their agent nor employee. He was the employee of Critchell, and acted in the capacity of clerk and surveyor of Critchell's insurance agency. Whitman, by his own acknowledgment, had actual knowledge of the real capacity in which Lookinland acted.

Whether, notwithstanding, Lookinland was so held out by the defendant as to justify the belief that he was defendant's

agent, or one having authority to take risks and make contracts of insurance that would be binding on the defendant, we will not stop to inquire.    As, assuming such to have been the case, we are of opinion that the decree is justified on the ground of a failure of proof that Lookinland did make the alleged contract of insurance.    Lookinland, at the request of Whitman, surveyed or examined the building, and on Saturday the 7th of October, 1871, had a conversation with Whitman upon the subject, in which it can not be claimed, at least according to Lookinland's testimony, that he agreed to insure, but in conclusion, Whitman was to send over an application to the office of Critchell.

E. A. Mann, Whitman's clerk, handed to Lookinland, between 4 and 5 o'clock P. M. of that day, at Critchell's office, an application, but what were its terms is not agreed, and the application was burned in the fire of October 8th and 9th, 1871.    It is claimed by the plaintiffs that, on the delivery of this application, Lookinland then made the contract with Mann.    Mann testifies that he asked Lookinland, on presenting the application, if it was all right, and Lookinland answered that it was; that he asked Lookinland if the risk was covered, and he said it was.

Lookinland testifies that, as he was leaving the office, a man stopped him and handed him an application, saying it was from Whitman; that he glanced over it, starting to go back into the office, remarking to the person who gave it to him that it was all right; that he then went into the office and put the application on the desk, intending to refer it to Critchell.    He denies stating that the risk was covered.

The proof of the contract to insure rests upon this alleged statement of Lookinland, that the risk was covered.    Mann testifies in the affirmative on this vital question of fact, and Lookinland in the negative.    They are the only witnesses in regard to it.    There is not a preponderance of evidence for the plaintiffs.

The attempted impeachment of Lookinland by contrary admissions on his part, testified to by Dinning and Wright, fails of effect, as Critchell, Lookinland and Ashworth, who were present at the conversation in which the supposed admissions are stated as having been made, all deny that any such admissions were made.

The premium, too, an important element in the contract of insurance, was not paid. Plaintiffs contend that there was an implied waiver of prepayment of the premium from the course of dealing between the parties, and from an alleged general custom among insurance agents and brokers, to give credit for premiums.

It is somewhat uncertain in what name the application was signed. Whitman testifies that it was signed "N. Whitman & Co." Mann testifies that it was signed "N. Whitman, Solicitor;" and the bill states that it was so signed. Whitman had had various partners. Critchell testifies that he supposed Whitman was alone, for a month before the fire.

The evidence shows there had never been any dealings between Critchell and Whitman individually, nor between Critchell and N. Whitman & Co. as that firm might have been composed in October. On Whitman dissolving with a former partner, Critchell had directed Lookinland and the other clerks not to take any risks from Whitman, or give him any credit.

In regard to general custom, the proof shows no more than the practice to give credit for premiums to parties of known pecuniary responsibility. The proof shows that Whitman's reputation for pecuniary responsibility was bad, and that Critchell did not regard him as pecuniarily responsible.

We see nothing in the general custom, or in any particular course of dealing between the parties, upon which to found any implied waiver of prepayment of premium, or which should have given rise to any reasonable expectation on the part of Whitman that he would be indulged with any credit for the premium.

27—68TH ILL.

Upon the whole case, we regard that there were here but the preliminaries to the making of a contract of insurance; that no contract was actually made.

The decree will be affirmed.

*Decree affirmed.*