[Civ. No. 624.  First Appellate District.—December 8, 1909.]

## AMERICAN CAN COMPANY, a Corporation, Respondent, v. THE AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, a Corporation, Appellant.

FIRE INSURANCE — PAROL CONTRACT — DEGREE OF PROOF REQUIRED.— Though a parol contract of insurance against loss by fire may be made and is enforceable, yet as such contracts are rarely made, and are not made in the usual and ordinary course of business, the proof of such oral contract must be clear and convincing, to the effect the contract was actually entered into, that each party understood it in the same light, and in regard to the same subject matter.

ID.—FINDING AGAINST EVIDENCE—PAROL CONTRACT NOT SHOWN—RENEWAL SLIP—ABSENCE OF COVERING NOTE—MERE DECLARATION BY CLERK.—A finding that a parol contract for fire insurance was made is against the evidence where it merely shows that renewal slips, consisting of applications to renew policies about to expire, were obtained by a collector, without any request for or issuance of a covering note, and that such applications for renewal were delivered by the collector to a clerk in the office of the insurance company, who had no authority to contract insurance, with the statement, "Here are some renewals," to which the clerk responded, "All right," depositing the same in his desk without looking at them, thereby importing only that the renewals would be referred to the company for its action.

ID.—ESSENTIAL ELEMENTS OF CONTRACT—FREE AND MUTUAL CONSENT. A contract is an agreement to do or not to do a particular thing, which requires a consent which is free and mutual, and communi-

cated by each to the other. The consent is not mutual unless the parties agree upon the same thing in the same sense; and unless they do so agree, there is no contract.

ID.—CONTRACT NOT DESCRIBING PROPERTY.—There could be no executed parol contract of insurance of plaintiff's property when there was no allusion in the conversation to any property.

ID.—EVIDENCE NOT INCONSISTENT WITH CONDITIONS PRECEDENT TO RENEWAL.—It is held that there is no evidence inconsistent with the hypothesis that the agent was to make a certificate of renewal, and the plaintiff was to pay the premium as condition precedent to the renewal, or to show that the parties intended to contract out of the usual course of business.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Goodfellow & Eells, for Appellant.

Chickering & Gregory, for Respondent.

COOPER, P. J.—This appeal is from a judgment in favor of plaintiff upon an alleged parol contract of insurance. On April 1, 1905, the defendant executed its written contract, by the terms of which it insured plaintiff against loss by fire not to exceed $3,000 from April 18, 1905, at noon, until April 18, 1906, at noon, on certain personal property situate on certain described premises belonging to plaintiff. The property of plaintiff was not destroyed until about 10 o'clock P. M. in the great fire of April 18, 1906, and the plaintiff does not claim that defendant is liable under the terms of the written policy which expired at noon on said day. It is alleged and claimed by plaintiff, however, that the defendant orally agreed on the seventeenth day of April, 1906, to insure, and it orally insured, the said property. In plaintiff's brief it is said: "The essential and ultimate fact is that on April 17, 1906, an agreement was entered into effecting a contract of insurance." The court found in this regard: "That on April 17, 1906, the firm of Watson, Taylor & Sperry, acting as agents for the plaintiff, American Can Company, notified defendant that plaintiff desired to renew its

said policy of insurance, and served upon the defendant a written notification to that effect, and thereupon defendant agreed to said renewal, and promised to execute a new policy of insurance which would embody the contract of insurance then and there entered into." It is also found that the plaintiff, within the time required by the policy, made out and delivered to the defendant proofs of loss duly verified, and that it has "performed all the conditions upon its part required to be performed by said contract of insurance, and that prior to the commencement of this action more than sixty days elapsed since said proof of loss as required by said contract of insurance was delivered to defendant by plaintiff."

A parol contract of insurance may be made and is enforceable; but as such contracts are rarely made, and are not made in the usual and ordinary course of business, the proof of such oral contract must be clear and convincing. In fact, it is the universal custom of insurance companies to issue written policies, with full and minute specifications as to their liability and the exceptions that would make the policy void. The preliminaries, as in contracts for the sale of real estate, are usually only negotiations which are afterward merged into the written contract. Hence it is at once apparent, even to the layman, that in the somewhat unusual claim that an oral contract of insurance was entered into, the only safe and sound rule is to require the proof to be clear and convincing to the effect that the contract was actually entered into, that each party understood it in the same light, and in regard to the same subject matter. (Kerr on Insurance, 52, sec. 33; 13 Am. & Eng. Ency. of Law, p. 221; *Cleveland Oil & Paint Mfg. Co.* v. *Norwich Union Fire Ins. Co.*, 34 Or. 228, [55 Pac. 435].)

The only evidence in support of plaintiff's claim is that of the witness Roy, who testified that he was at the times mentioned the chief clerk of Watson, Taylor & Sperry, who were and had been for some time the insurance brokers for the plaintiff; that Edward Brown & Sons were the agents of defendant, and Fred Brown was the clerk of Edward Brown & Sons, with authority to accept business and issue covering notes, but not to make out or sign policies; that on the seventeenth day of April, 1906, he prepared slips for the renewal

of the said policy which was to expire at noon on the following day, and also of two other policies in companies for which said Brown & Sons were agents—one in the Globe & Rutger's and one in the Delaware. There were nine of these slips, three for each intended policy, and the slips contained in effect a description of the risk, and were prepared with a view of being pasted on the printed policies instead of filling up the blank space in the policy by writing; that usually he went around with such slips to the office of the company at any time within a week or ten days before a policy would expire; that in many cases they did not have time to prepare slips, and then they would go out and get a covering note and send the slips in in a few days afterward. The language of the witness as to what then took place is as follows: "I had those slips prepared. After I got ready to go home, about twenty minutes past 5 or half-past 5, I stepped into Edward Brown & Sons' office on California street. They had a regular insurance office. So I stepped in behind the counter, as in fact I was accustomed to do, and Mr. Brown here [pointing to a person in the courtroom] was at his desk putting his things away, that is, Mr. Fred Brown; he had charge of the city department; so I said, 'Here, Fred, are some renewals for you,' and Fred says, 'All right.' As I turned around and went out I think he put them in a drawer of his desk. This was about all that was said about it." In cross-examination the witness testified: "I went in there late in the afternoon and was in a hurry. I rushed right into the office and threw these slips down. There were three for each company—nine papers. I just slapped them down one on top of the other on his desk and said, 'Fred, here are some renewals for you.' He said, 'All right.' Then I went right out. It was after business hours at that time and he was just closing up. I think he picked them up in his hand and put them in a drawer; don't think he took time to read them. I just turned around—I went in there in a hurry—I turned around and went out, and I had the impression that he just opened his drawer and put them in like he did before. Q. He did not take time to read and look over nine slips of paper? A. No, sir."

It is quite evident that these slips were only applications for the renewal of the three policies described therein. The

answer of Fred Brown "All right" did not mean anything more than that he would take the matter up in due course. He did not even know what policies were referred to in the slips. He had the right to suppose that it would be sufficient if he looked into the matter during business hours of the next day, as it was the custom to bring such applications in a week or ten days before the policy would expire. He had no authority to issue policies but only to receive applications. No application was made to him for a covering note and no such note was issued. The name of the plaintiff was not even mentioned, the rate of insurance, the time of payment of the premium, the property to be insured, were not either of them mentioned. Of course when the slips would come in the ordinary course of business to be examined it would be seen that there was among them an application for a new policy of insurance upon the property of plaintiff; but it does not follow that the defendant then and there orally agreed to insure the plaintiff's property or to renew the insurance thereon. No policy was ever issued and no covering note taken.

A contract is an agreement to do or not to do a particular thing. It must be by consent, which is free, mutual and communicated by each to the other. The consent is not mutual unless the parties all agree upon the same thing in the same sense, and unless they do so agree there is no contract. How can it be said that the defendant agreed to issue a policy to plaintiff when the name of plaintiff was not even mentioned nor in any way communicated to defendant in the oral conversation? How can it be said that defendant agreed to issue a policy covering certain property when no reference was made in the conversation to any property? It could as well be said that if the applications, instead of being for renewals, had been for new policies from new customers, putting the applications in the desk and the answer being "All right" was an oral agreement to insure. It was not incumbent on defendant because it made a contract of insurance which would expire on April 18, 1906, to make another similar contract for another year, and Roy knew this, for in his testimony he said: "In case it should happen when we made applications to them, either for original insurance or for renewals or for reinsurance, and they could not do the business because the

line of the company was full, in such case we would place the risk with some other company.''

This case is similar to *Taylor* v. *Phoenix Ins. Co.,* 47 Wis. 365, [2 N. W. 559], with the exception that the oral contract in this case is not near so clearly made out as it was in that case, and there the court said: ''We fail to find in the above testimony satisfactory evidence of the renewal of the policy *in praesenti.* The purport of the conversation on the subject between the plaintiff and Mr. Dean was that the policy should be renewed thereafter, not that it was then renewed. The plaintiff said to the agent that he wanted it renewed, and desired that it should be renewed before he left home. The agent assented. They then agreed upon the premium to be paid therefor. The agent said that there was nothing more for the plaintiff to do, but that he (the agent) had the description of the property to be insured in his office and promised to attend to the matter of the renewal. The plaintiff then directed the agent to renew the old policy the same as it was before, in the same company, for the same amount, and the agent promised to do so. That is all there is of the alleged parol contract of renewal. It seems to us that the whole conversation pointed unmistakably to some further act to be done to renew the policy, to renew *in futuro,* else why the talk about the agent having the description in his office and his promise to attend to the business, and why the closing direction to the agent to renew the old policy in the same company and for the same amount? And if the policy was then and there renewed, the description ceased to be material and the promise was superfluous, as was also the final direction to the agent to renew. Indeed, both the promise and direction tend strongly to prove—if they do not prove conclusively—that neither of the parties intended a renewal *in praesenti,* or supposed that they had made any contract than an executory oral contract that the company should renew the policy and the plaintiff should pay the premium at some early future time. There is no evidence whatever inconsistent with the hypothesis that the agent was to make a certificate of renewal, and the plaintiff was to pay the premium, as conditions precedent to the renewal, or to show that the parties intended to contract out of the usual course of the business of insurance.'' (See, further, *Idaho Forwarding*

*Co.* v. *Firemen's Fund Ins. Co.,* 8 Utah, 41, [29 Pac. 826] ; *Consumers' etc.* v. *German Ins. Co.,* 70 N. J. L. 226, [57 Atl. 440] ; *Whitman* v. *Milwaukee Fire Ins. Co.,* 128 Wis. 124, [116 Am. St. Rep. 25, 107 N. W. 291] ; *Cleveland Oil & Paint Mfg. Co.* v. *Norwich Union Fire Ins. Co.,* 34 Or. 228, [55 Pac. 435] ; *Dinning* v. *Phoenix Ins. Co.,* 68 Ill. 414.)

The case of *Gold* v. *Sun Ins. Co.,* 73 Cal. 217, [14 Pac. 786], does not aid the plaintiff. That was an action to recover damages for failure to comply with an oral contract to issue a fire insurance policy. A demurrer to the complaint was over-ruled in the lower court, and the defendant failed to answer. Therefore the only question for the supreme court to pass upon was as to whether or not the facts stated in the complaint were sufficient to entitle the plaintiff to relief. The court held that the complaint was sufficient; that it stated the date, the amount of the original policy and the property which was insured; that the insurance company received a valuable consideration, and promised to renew the policy, and in consequence of such promise and such agreement the plaintiff had failed to procure other insurance upon the property; that at the time he suffered the loss he was under the belief that the defendant had complied with its contract and issued to it a policy of insurance as it had agreed to do. In that case there was no uncertainty about the time of the contract, or the parties, or the property to which it referred.

We conclude that the finding is not supported by the evidence, and the judgment and order are reversed.

Hall, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 7, 1910, and the following opinion was then rendered thereon:

THE COURT.—On petition for rehearing the respondent calls our attention to the fact that in the opinion the court failed to refer to the first and primary ground upon which the respondent relied in support of the judgment of the trial court, that "prior to the expiration of the previous insurance the defendant company had sent to the plaintiff a notice that this policy would expire, and that it was the custom between

the companies to make annotation upon such notice if the policy was to be dropped; that no such annotation notice was placed upon the expiry notice sent out in this case."

The only testimony relied upon in support of such proposition is that of the witness Roy, who testified that the companies always send out expiration notices, and if the policy was to be dropped they mark it on the expiration notice; that he thought it was customary to do so; he could not say that such notice was sent in this particular case.

This testimony is not sufficient to support a finding, even if there had been such finding, to the effect that the company sent to the respondent a request for the renewal of the insurance, and that the renewal slip delivered was an acceptance of such request. Particularly is this so when the evidence referred to is considered in connection with the evidence of the same witness, that his company usually went around for renewals a week or ten days before a policy would expire; and that if the company would not renew the insurance because the line was full, they would place the risk with some other company.

We know that in this particular case the request claimed to be a renewal request was not delivered until the close of business hours the day before the policy expired, and therefore Roy had not followed his usual custom of going around a week or ten days before the policy expired to request a renewal. We cannot hold that because the witness Roy thought that it was customary for the companies to send out renewal notices, that this particular company in this particular case did send to this plaintiff a renewal notice.

Proof of usage or custom is admissible only as an aid or instrument tending to aid interpretation. In fact, in this case the complaint alleged, and the court found, that plaintiff notified defendant of its desire to renew, and the defendant agreed and promised to renew the policy. This appears to have been the theory upon which the case was tried. There is no allegation and no finding as to defendant's requesting and plaintiff agreeing to a renewal.

Rehearing denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 5, 1910.