[Civ. No. 373. Fourth Appellate District.—April 29, 1932.]

HAZEL TOTH, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Appellant.

Knight, Boland & Christin for Appellant.

R. W. Henderson, J. O. Reavis and Rowen Irwin for Respondent.

THOMSON, J., *pro tem.*—This is an appeal from a judgment in favor of plaintiff upon an alleged parol contract of insurance.

The trial court included among its findings of fact certain findings, the substance of which is as follows: That on May 14, 1930, Andrew Toth and defendant, the said defendant acting through and by its agent and representative thereunto fully empowered and authorized by the defendant, entered into a certain oral contract whereby the defendant for a valuable consideration then and there paid to defendant by said Toth did insure and agree to insure the life of said Toth for $2,500, payable to plaintiff as beneficiary, for a period of sixty days, and to issue to said Toth its written policy of life insurance for said sum of $2,500, payable to said plaintiff as beneficiary; that defendant received said valuable consideration and approved and ratified the act of its said agent in insuring the life of said Toth, agreeing to insure his life and agreeing to issue a policy of insurance upon his life; that plaintiff has demanded of defendant the issuance of said policy in accordance with said oral contract and has demanded the payment of said sum of $2,500, but defendant has denied and

still denies the existence of said contract of insurance or the existence of any contract of life insurance between said defendant and said Toth; and that defendant has not returned or tendered or offered to return said consideration but has retained the same and applied it to its own uses.

These findings are attacked by appellant on the ground that they are not supported by the evidence, in that the evidence shows that (1) no oral or any contract was ever entered into between Andrew Toth and defendant; (2) no agent of the defendant was authorized to enter into such a contract of insurance as found by the court; and (3) no valuable or any consideration was ever paid by Toth to the defendant.

■ With regard to appellant's first contention, it is well settled under the authorities of this state that an oral contract of insurance is valid and enforceable. (*American Can Co.* v. *Agricultural Ins. Co.*, 12 Cal. App. 133, 135 [106 Pac. 720, 721]; *Law* v. *Northern Assur. Co.*, 165 Cal. 394, 400, 401 [132 Pac. 590]; *Harlow* v. *American Equitable Assur. Co.*, 87 Cal. App. 28, 31 [261 Pac. 499]; *Smith* v. *Massachusetts Bonding etc. Co.*, 71 Cal. App. 661, 666 [236 Pac. 176].) But oral contracts relating to life insurance are seldom made and are not entered into in the ordinary course of that branch of the insurance business, it being the universal custom of life insurance companies to issue written policies specifying in detail the conditions of their liability. Hence our courts of last resort have adopted the rule that proof of such oral contracts must be clear and convincing to the effect that such contract was actually entered into, that each party understood it in the same light and in regard to the same subject matter and that the parties intended to contract in a manner not in the usual course of business. (14 Cal. Jur., p. 429.) As expressed in the case of *American Can Co.* v. *Agricultural Ins. Co.*, *supra:*

"In fact, it is the universal custom of insurance companies to issue written policies, with full and minute specifications as to their liability and the exceptions that would make the policy void. The preliminaries, as in contracts for the sale of real estate, are usually only negotiations which are afterward merged into the written contract. Hence it is at once apparent, even to the layman, that in the somewhat

unusual claim that an oral contract of insurance was entered into, the only safe and sound rule is to require the proof to be clear and convincing to the effect that the contract was actually entered into, that each party understood it in the same light, and in regard to the same subject matter." (*Law* v. *Northern Assur. Co., supra.*)

With this rule in mind let us examine the evidence in the case at bar relative to the alleged oral contract of insurance. Plaintiff testified in substance that J. R. Thomas, a soliciting agent of defendant, talked to her husband several times, over a period of three or four months, about taking a life insurance policy with defendant company to replace a policy which decedent had been carrying in another company. The first of these conversations occurred in March or February, 1930. The next conversation was in the latter part of April, when Thomas told her husband he could give him more life insurance for less premium than was provided for in a policy then carried by decedent. Finally decedent told Thomas he would cancel the other policy and take out a policy for $2,500 with Thomas in the defendant company. On April 10th decedent made a written application to defendant through Thomas for a $2,500 policy. Plaintiff further testified that Thomas spoke to her husband many times about the matter, the last time being about ten days before her husband died, when Thomas said to decedent, "Mr. Toth, I came after that deposit for the premium on the $2,500 life insurance policy, you know I have to have a deposit of $5.00 in order to insure the doctor's examination." Decedent told him to come back the following Wednesday, on which day, being May 14th, the examination was had and it was satisfactory for insurance. Plaintiff further testified that some time in April Thomas said to her husband, "You will have to pay me a deposit of $5.00 on the premium and I will deliver the policy and you pay the balance of the premium. As soon as you are examined by the doctor you are protected, if you don't have the money you have 60 days to pay it to me." Plaintiff further testified that Thomas told her husband that the premium was $25 semi-annually, but defendants produced evidence to show that the semi-annual premium was $33.30. After the doctor's examination Thomas told decedent, according to plain-

tiff's testimony, "I will have your policy ready for you and I will bring it to you Monday and you pay me the balance of the premium." On May 16th, two days after the doctor's examination, decedent was taken suddenly ill and died the following day. No insurance policy was ever delivered and there is no evidence that one was ever issued. The evidence shows that J. R. Thomas was a soliciting agent; that he had no power or authority to make, alter or discharge defendant's contracts. Thomas testified that he never told decedent he was insured in defendant company or that he would be covered by insurance, but that he did tell decedent that he was not insured until the first premium was paid in full. There is a conflict of evidence as to whether or not the $5 was paid to Thomas on account of the premium, but the evidence shows that, in any event, no greater amount than $5 was ever paid on account of the premium. Thomas testified that he never turned any of that premium over to the company.

The written application which was signed by decedent contained the following stipulations: "That no agent, medical examiner or any other person, except the officers of the company, have power on behalf of the company: (a) to make, modify or discharge any contract of insurance, (b) to bind the company by making any promises respecting any benefits under any policy issued hereunder . . . That the company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the applicant, . . . "

The evidence does not clearly indicate whether or not the statements of Thomas upon which plaintiff predicates her claim of an oral contract of insurance were made before the making of the application by decedent. If so, then the oral statements and promises, if any, would be merged in the written application for insurance. (14 Cal. Jur., p. 420; *American Can Co.* v. *Agricultural Ins. Co., supra; Bankers' Reserve Life Co.* v. *Yelland,* 41 Fed. (2d) [C. C. A. 9th] 684, 687.) If made after the execution of the application by decedent, then the question involves the matter of the waiver or modification of provisions of a written contract

by subsequent oral representation or agreement. The application provides explicitly that no insurance on the life of decedent was to be in effect until the delivery of the policy and the payment in full of the first premium, neither of which was ever made. The provisions contained in the application and quoted above show that no oral contract of insurance was contemplated by the decedent or the defendant, but that the contract of insurance was to be complete only when the policy was delivered and the first premium paid in full. The application was but a proposal for insurance which the company was free to accept or reject as it might see fit. There is no evidence to show that the company ever accepted the proposal and the evidence shows affirmatively that the company never delivered such a policy and that the first premium was never paid, except that there is evidence to the effect that $5 was paid on account of the premium.

In the face of such facts and circumstances it cannot be said that the proof of an oral agreement of insurance in this case is either clear or convincing. Even if we accept the testimony of plaintiff without considering any conflicting statements on the part of witness Thomas, still there is not sufficient proof of an oral contract of insurance, because, under plaintiff's own testimony, Thomas said to decedent, "You will have to pay me a deposit of $5 on the premium and I will deliver the policy and you pay me the balance of the premium. . . . "; and that after the medical examination Thomas said to decedent, "I will have your policy ready for you and I will bring it to you Monday and you pay me the balance of the premium." The testimony of the plaintiff herself indicates that defendant's agent meant that he would have to deliver the policy before the insurance became effective. There is some evidence to the effect that Thomas told decedent that, after the medical examination, he would be "protected", but there is no evidence to indicate what was intended or understood by the word "protected". Applying the test prescribed by the California authorities in considering oral contracts of insurance and outlined above, the proof in the case at bar is neither clear nor convincing to the effect that such contract was actually entered into; or that each party understood it in the same light, or in

regard to the same subject matter; or that the parties intended to contract in a manner not in the usual course of business.

Appellant further contends that no agent of the defendant was authorized to enter into such a contract of insurance as was found by the court. The only agent of defendant with whom decedent had any dealings in regard to the purported oral contract in controversy was said J. R. Thomas. Plaintiff offered no evidence to show what authority was vested in Thomas. In answer to a request for a stipulation as to the nature of Thomas' agency, made by plaintiff's counsel, defendant's counsel stated: "The word 'agent' has wide implications, therefore I cannot go so far as to say he was an accredited agent. I will say during the time alleged in the complaint Mr. Thomas was an agent of the defendant authorized to solicit insurance and to write up an application and send it in, and other than that he had no authority." Defendant also introduced evidence, which was uncontradicted, to the effect that the only authority which Thomas had was to write the application and submit it to the company and that neither Thomas nor any other agent of defendant employed in the Bakersfield district had any power or authority to make or enter into any agreement whatever for life insurance. It is apparent from this evidence that neither Thomas nor any other person employed by defendant in the Bakersfield district had any authority whatever to make, on behalf of defendant, an oral agreement insuring the decedent's life. Defendant had the right to thus limit the authority of its soliciting agents and such a limitation of authority has been frequently upheld in this state. (*Iverson* v. *Metropolitan Life Ins. Co.*, 151 Cal. 746, 751 [13 L. R. A. (N. S.) 866, 91 Pac. 609]; 14 Cal. Jur., p. 460.) A mere soliciting agent or other intermediary operating between the insured and the insurer has authority only to initiate contracts, but not to consummate them, and cannot bind his principal by anything he may say or do during the preliminary negotiations. (14 Cal. Jur., p. 457; *Browne* v. *Commercial Union Assur. Co.*, 30 Cal. App. 547, 554 [158 Pac. 765]; *Sharman* v. *Continental Ins. Co.*, 167 Cal. 117, 124 [52 L. R. A. (N. S.) 670, 138 Pac. 708].) The evidence in the case at bar shows without contradiction

that Thomas was only a soliciting agent. He therefore had no authority to make any contract of insurance, either oral or written; and, even if we assume that he attempted to make an oral contract to insure decedent, his lack of authority so to do would prevent such purported oral contract from being valid or effective.

Moreover, the limitation of Thomas' authority as a soliciting agent of defendant was affirmatively brought to the attention of decedent when decedent made the application for insurance, which application contained the provision that no agent or any other person except officers of defendant company has power to "make, modify or discharge any contract of insurance" or to bind the defendant in any way "by making any promises respecting any benefits under any policy issued hereunder"; and also the provision that defendant would incur no liability under the application until it had been received, approved and a policy issued and delivered with a full first premium paid to and accepted by defendant. The decedent signed the application and it is presumed that he knew its contents. (*Fidelity & Cas. Co.* v. *Fresno Flume & Irr. Co.,* 161 Cal. 466, 472 [37 L. R. A. (N. S.) 322, 119 Pac. 646].) By these provisions of the application express notice was given to decedent that the officers of the defendant reserved the exclusive right to determine whether or not defendant would insure him, and also that Thomas had no right or authority to bind defendant by any promises or purported oral agreements. (*Iverson* v. *Metropolitan Life Ins. Co., supra.*) Thomas, therefore, had neither actual nor ostensible authority to make the purported oral contract relied upon by appellant and consequently no completed contract of insurance on the life of decedent, either oral or written, was ever entered into by decedent and defendant. An insurer is not bound by representations or purported agreements made by an unauthorized agent. (14 Cal. Jur., p. 458; *Fidelity & Cas. Co.* v. *Fresno Flume & Irr. Co., supra.*)

Appellant assails the finding of the trial court which finds that Toth and the defendant entered into an oral contract, whereby the defendant, for a valuable consideration paid by said Toth, insured and agreed to insure his life for the sum of $2,500; and defendant received said

consideration and approved and ratified the act of its said agent in insuring the life of said Andrew Toth, on the ground that said finding is not supported by the evidence. There is a substantial conflict of evidence respecting the payment of the $5 on account of the premium, and for that reason this court must uphold the finding of the trial court relating to said payment. (2 Cal. Jur., p. 881; *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 Pac. 1157].) But we are of the opinion that the portion of the finding to the effect that said defendant received the said consideration and approved and ratified the act of its said agent in insuring the life of said Andrew Toth, is not sustained by the evidence. In support of this finding respondent argues that, with knowledge of plaintiff's claim, defendant chose to retain said deposit of $5; that Thomas undertook on behalf of defendant to waive the limitation of his agency specified in the application, and that defendant, by entering this payment of $5 in the book in the Bakersfield office and retaining the same, waived this provision of the application. Respondent further argues that "if Mr. Thomas acted beyond his authority in assuring Mr. Toth that he was protected, then the company was placed upon its election whether to repudiate the act of its agent or ratify it". Respondent cites in support of this contention section 2310 of the Civil Code, which is as follows: "A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof"; and also section 2311 of the Civil Code, which is as follows: "Ratification of part of an indivisible transaction is a ratification of the whole." The only other authority cited by respondent in support of this point is the case of *Massachusetts Bonding etc. Co.* v. *Vance,* 74 Okl. 261 [15 A. L. R. 981, 180 Pac. 693]. This case, however, differs very materially from the case at bar in that, in the Oklahoma case, the company clothed the agent with ostensible authority to make an oral contract of accident insurance; the full first premium was paid; and there was no application for insurance signed by the insured, who was without any knowledge of any limitation of the agent's authority. It is also ap-

parent from the opinion of the court that the company retained the premium with knowledge of all the material facts. We cannot agree with respondent's contention that defendant ratified an oral agreement made by defendant's agent, Thomas. ▓ The rule is well established that a ratification of unauthorized acts of an agent, in order to be effective and binding upon the principal, must have been made with full knowledge of all material facts, and that ignorance, mistake or misapprehension of any of the essential facts or circumstances relating to the transaction claimed to have been ratified, will absolve the principal from all liability by reason of any purported assent to any previously unauthorized act. (1 Cal. Jur., p. 778; *Pacific Bone etc. Co. v. Bleakmore,* 81 Cal. App. 659, 667 [254 Pac. 618]; *Brown v. Rouse,* 104 Cal. 672, 676 [38 Pac. 507]; *Hall v. E. W. Wells & Son,* 24 Cal. App. 238, 250 [141 Pac. 53].) The proof in the case at bar fails to show any knowledge whatever on the part of any officer of defendant company of any oral contract made with said decedent. So far as the evidence shows, the only information concerning the transaction in controversy which became known to the defendant was the execution of the application, which showed a payment of only $5 on account of an annual premium of $66.60 or a semi-annual premium of $33.30, and which also showed on its face that decedent knew and accepted the conditions recited in the application to the effect that no agent of the company could make a contract of insurance and that no liability would be incurred by defendant until the application had been approved by the defendant, and a policy issued and delivered, and the full first premium paid to and accepted by the company, during the lifetime of the applicant. There being no proof of knowledge on the part of defendant of any of the material facts connected with the alleged oral contract, no ratification of such contract was established. Consequently the finding complained of is not supported by the evidence.

After considering all the evidence, our conclusions are (1) that no agent of defendant was authorized to enter into a contract of insurance with decedent; (2) that defendant did not ratify any purported oral contract of insurance with decedent; and (3) that no contract of insurance, oral or

written, was ever entered into between decedent and defendant. Consequently, so far as the record shows, no liability was incurred by defendant.

It follows that the judgment must be and it is hereby reversed.

Barnard, P. J., and Marks, J., concurred.