## MURPHY & AMES, Inc., v. HERFURTH.
### No. 5474.

Court of Appeals of the District of Columbia.
Argued May 5, 1932.
Decided June 13, 1932.

Paul V. Rogers and William E. Furey, both of Washington, D. C., for appellant.

Charles A. Douglas and Edmund D. Campbell, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal by defendant from a judgment against it on a verdict for $1,870 in the Supreme Court of the District of Columbia as damages for alleged breach of contract.

Plaintiff, a general contractor, while contemplating a bid for the contract to erect a parish house for St. Paul's Episcopal Church, in the city of Washington, in January, 1928, received the following letter from the defendant lumber company:

"Murphy and Ames,
"January 4, 1928.
"H. Herfurth, Jr., Washington, D. C.

"Dear Sir: We will be pleased to furnish the millwork columns, etc., for St. Paul's parish house without the folding partitions, and according to our list.

"For four thousand nine hundred and thirty ($4,930) dollars.

"Very truly yours,
"Murphy & Ames.
"[Signed] W. P. Ames."

The list therein referred to did not accompany the letter, nor did the plaintiff see it, or ask to see it, until the trial.

Plaintiff having thereafter bid for, and obtained, the building contract, went with one Clark, his employee, to the office of defendant, where he or they talked with one Ames, an officer of the defendant company, about the matter.

Different versions of that conversation were given by the respective parties, and different interpretations of its legal effect were apparently entertained and relied on, to which we will refer later.

The defendant failed to furnish the millwork to the plaintiff, who, instead, bought it elsewhere, and sued for the difference between the sum mentioned in defendant's offer and the price paid for it in the open market.

That difference was $1,870, and was alleged in the declaration as, and found by the jury to be, plaintiff's damages resulting from defendant's breach of contract.

There are seven assignments of error, six specific, and one general.

2 (a) relating to the court's charge to the jury reads: "The charge took as uncontroverted the evidence on the issue of acceptance by the defendant of the contract alleged, notwithstanding the presence of conflicting evidence on the issue."

While the word "defendant" in that assignment could have a meaning, we assume from the exception in the bill, and its treatment in the briefs, that it was intended to be "plaintiff," and will so regard it.

Here the defendant contends that the court should have left to the jury the question of acceptance by plaintiff of defendant's offer, and that it did not do so.

Plaintiff's declaration alleging a contract and a breach thereof, undertook to prove both to the satisfaction of the jury, unless either was admitted by the defendant.

But defendant's plea denied both, and its evidence did likewise.

Plaintiff, for proof of the contract, relied on defendant's written offer and his own, somewhat corroborated, testimony of an oral acceptance at the interview above mentioned.

The defendant's only witness in the record was Ames, who denied any acceptance of its offer, or the existence of any contract, or any demand for its performance, though he did not deny that his company furnished no materials to the plaintiff.

In these circumstances the first allegation to be proved was the existence of the contract, and as to that the plaintiff's testimony tends to show that he and Clark went to defendant's place of business, where plaintiff told Ames he had come to accept his offer; that Ames and another man then went into another room with the plans and specifications, and after 45 minutes returned, saying that certain materials were not included in the offer, but he would see what could be done about it.

Plaintiff and Clark thereupon left the matter in that uncertain state, neither having yet seen the list which was the basis of the offer.

Thereafter plaintiff again asked Ames to let him know immediately about the job, and finally he asked if Murphy and Ames intended to do the millwork or not.

Apparently without answer to that important question, he had no further personal communication with the defendant company, but was later told by his secretary that she had learned by telephone that "They could not do the job."

As against this testimony of the plaintiff, Ames, for the defendant, testified that at the time of the offer an itemized list had been made up in his office of the millwork his company was prepared to supply, and that they were at all times ready and willing to furnish those items as offered; whereupon the list was admitted in evidence, but is not included in this record.

He further testified that, when plaintiff and Clark were at his office, they discussed the proposal, and that they thought it included certain paneling, which it did not, but he denied that plaintiff then or at any time accepted the offer.

From this outline of the testimony it appears to have presented a fundamental and controlling question of fact as to whether the minds of the parties ever met upon the terms of any contract (Elliott on Contracts, vol. 1, § 36; Davenport v. Newton, 71 Vt. 11, 42 A. 1087; American Can Co. v. Agricultural Ins. Co., 12 Cal. App. 133, 106 P. 720; Cunningham Mfg. Co. v. Rotograph Co., 30 App. D. C. 527, 15 L. R. A. [N. S.] 368, 13 Ann. Cas. 1147; Rankin v. Collins, 40 App. D. C. 224), and that fundamental question was, in effect, taken from the jury by the charge of the court when he said:

"Now this paper, this proposition dated January 4 by the defendant company was received by the plaintiff as a proposal or estimate and accepted by him. This made a contract between these two parties, and the difficulty in the case is largely, if not exclusively, just what that contract was, and we have, of course, to look at the written proposition."

The judgment must therefore be reversed, and the cause remanded for a new trial, and it is so ordered.

Reversed.