### GANDELMAN v. MERCANTILE INS. CO. OF AMERICA et al.
#### No. 8185.

United States District Court
S. D. California, Central Division.
April 27, 1950.

Don Marlin, Los Angeles, Cal., for plaintiff.

Hindman & Davis, Los Angeles, Cal., for defendants.

HARRISON, District Judge.

Plaintiff sues the two defendant insurance companies to recover under fire insurance policies prepared by each of them. The real issues are whether any liability was created under the policies by their preparation without the knowledge and consent of the plaintiff, preparatory to a substitution of the policies in place of an existing policy, or by their delivery to the plaintiff after the loss.

After a mistrial both plaintiff and defendants made motions for a summary judgment and the same have been submitted to me for determination. The motions have been submitted under a stipulation of facts, the affidavit of the plaintiff, the affidavit of Edward Oelsner, the transcript of testimony taken at the trial and the exhibits introduced during the trial. Counsel submit their motions on the premise and stipulation that there exists no material fact in dispute or where such conflict exists it is to be considered immaterial.

I feel that the motion of the defendants should be granted and I will therefore present the facts most favorable to the plaintiff. Where any conflict exists it shall be resolved in favor of the plaintiff.

The facts disclose that Edward Oelsner was the agent for the defendants and the National Fire Insurance Company of Hartford (hereafter referred to as National), and other insurance companies, and was not acting in any way as agent for the plaintiff.

Plaintiff was the owner of a stock of merchandise which was insured under a provisional fire insurance policy in the same form as the policies sued upon for a provisional amount of $100,000.00, being 100% of the total contributing insurance of $175,000.00.

On or about April 2, 1947, National directed Oelsner to reduce its liability under their policy and shortly thereafter delivered to the agent an endorsement for attachment to its policy, which provided that the policy should be reduced to a provisional amount of $50,000.00, being 50% of the total contributing insurance of $140,000.00.

Oelsner had difficulty in placing the contributing insurance and at his suggestion National delivered to him an endorsement for its policy which provided that the policy should be for the provisional amount of $50,000.00( bring 35% of the total contributing insurance, with a limit of liability for all contributing insurance in the sum of $200,000.00.

In attempting to obtain additional contributing insurance to replace the existing National policy, Oelsner as agent for the defendant, Mercantile Insurance Company of America, on or about April 2, 1947, contacted the Los Angeles office of defendant and requested permission to issue to the plaintiff a provisional reporting form policy of fire insurance covering said merchandise. Mercantile authorized Oelsner, to execute and issue its policy of fire insurance No. 280973 in favor of plaintiff insuring the merchandise for the provisional amount of $5,000.00, being 5% of the total contributing insurance, with a limit of liability for all contributing insurance in the sum of $200,000.00. Oelsner, as agent, prepared the policy.

Similarly, Oelsner, on or about the same date, as agent for the defendant, The Reliance Insurance Company of Philadelphia, was authorized to execute and issue its policy of fire insurance No. PF804647 in favor of plaintiff, insuring the merchandise for the provisional amount of $12,500.00, being 7½% of the total contributing insurance, with a limit of liability for all contributing insurance in the sum of $200,000.00. Oelsner prepared this policy also.

Thus, the agent had in his possession at this time the proposed endorsement to the National policy and the policies of the two defendants.

On April 11, 1947, a fire occurred destroying the property covered by the National policy and plaintiff's loss by reason of the fire was in the amount of $143,978.96.

The provisional policy of National required a written report of values each month and it developed that the plaintiff had made his last written report November 30, 1946, in the amount of $101,766.95. Thereafter, National paid that amount under a so-called compromise agreement. It is apparent that the plaintiff's inability to recover the full amount of his loss from National was caused by his failure to make his monthly report of values as required by the terms of the policy. Wallace et al. v. World Fire & Marine Ins., 9 Cir., 166 F.2d 571; Id., D.C., 70 F.Supp. 193. This litigation is an attempt to recoup a portion of the loss from the defendants.

On May 17, 1947, Edward Oelsner delivered to the plaintiff the two policies that

form the basis of this litigation; informed the plaintiff of the circumstances under which they were prepared and at the same time billed plaintiff for the premiums. For the purpose of passing on the motion for summary judgment it must be assumed that plaintiff paid said premiums and in due course transmitted the same to the defendants, and thereafter an offer to return said premiums was rejected. Oelsner, as heretofore pointed out and as conceded to the court by plaintiff, was not the plaintiff's agent but the agent of the defendants and other insurance companies, consequently all acts performed by him were for and in behalf of his principals, the defendants herein.

I must further accept for the purpose of this motion the plaintiff's statement that he had ordered additional insurance in the amount of $25,000.00 over the telephone shortly before the policies in question were prepared.

Based upon the foregoing statement of facts plaintiff contends that the two policies were valid contracts at the time of their preparation, and, if not, the post-loss conduct ratified said policies and the defendants are estopped to deny their liability.

■ It is apparent from the foregoing statement of facts that Oelsner was in the process of assembling policies to substitute for the existing National policy. Even if he had been successful in doing so, before any substitution could be affected, the plaintiff would have to consent thereto. K.C. Working Chemical Co. v. Eureka Security Fire & Marine Ins. Co., 82 Cal.App.2d 120, 185 P.2d 832–838; section 1550, Civ.Code of Cal. The two policies and the rider for the National policy were intended as a substitute for the existing National policy and until such intention was carried out by mutual consent of all parties, no liability was created under the proposed substituted policies or the substituted rider. Crawford v. Trans-Atlantic Fire Ins. Co., 125 Cal. 609, 58 P. 177; City of N. Y. Ins. Co. v. Jordan, 5 Cir., 284 F. 420; American Can. Co. v. Agricultural Ins. Co., 12 Cal.App. 133, 106 P. 720; Law v. Northern Assur. Co., 165 Cal. 394, 132 P. 590; Sec. 381, Insurance Code of Cal. Plaintiff ignores the rider to the National policy but seeks the benefits of the defendants' policies. He wants that which is to his benefit but rejects that which is detrimental. Oelsner had no authority to cancel or reduce the liability of the National policy without plaintiff's consent. Tacoma Lumber and Shingle Co. v. Fireman's Fund Ins. Co., 87 Wash. 79, 151 P. 91.

■ Insurance policies are governed by the same general rules which pertain to all contracts and the alleged contracts of insurance must meet the same test that would apply to any contract. K. C. Working Chemical Co. v. Eureka Security Fire & Marine Ins. Co., supra; 14 Cal.Juris. 416. Tested by the ordinary rules of contract there must have been a meeting of the minds, supported by an offer and acceptance. K. C. Working Chemical Co. v. Eureka Security Fire & Marine Ins. Co., supra. In the case at bar there never was an offer or acceptance or meeting of the minds of the parties. The offer was in an embryo stage. It was never presented or known to the plaintiff. Plaintiff had no opportunity to accept it prior to the loss, hence, there was no possibility of the meeting of the minds prior to such loss. The written policies were never brought into being, and even if they had been plaintiff would not be entitled to recover on all the policies involved under a well recognized rule of law as set forth in the oft cited case of Kerr v. Milwaukee Mechanics' Ins. Co., 8 Cir., 117 F. 442, 447, as follows: "An agent of an insurance company has no authority to insure property already destroyed; and a policy written and intended as a substitute for a subsisting policy in another company, but not delivered, and of which the assured has no knowledge until after the property is destroyed by fire, is not a valid contract of insurance."

The plaintiff insists that there was an oral contract of insurance. The testimony of the plaintiff as set forth in the transcript, for the purpose of this motion, must be accepted as true. He testified in substance that he called Mr. Oelsner on the telephone and ordered an additional $25,-

476

000.00 insurance and Mr. Oelsner replied: "Okay, Sidney, you are covered." Upon such testimony plaintiff bases his claim that there was an oral contract for insurance and that the policies involved represent such oral contract.

The law appears well settled that "a parol contract is valid and enforceable", (K. C. Working Chemical Co. v. Eureka Security Fire & Marine Ins. Co., supra [82 Cal.App.2d 120, 185 P.2. 832, 838]) but such contracts are rarely made and are not made in the ordinary course of business, (K. C. Working Chemical Co. v. Eureka Security Fire & Marine Ins. Co., supra; American Can Co. v. Agricultural Ins. Co., supra) the proof of such oral contract must be clear and convincing. K. C. Working Chemical Co. v. Eureka Security Fire & Marine Ins. Co., supra.

It is crystal clear to me that the short telephone conversation between the plaintiff and the agent Oelsner did not constitute an oral contract for insurance. In said conversation no company was mentioned. This alone is fatal. K. C. Working Chemical Co. v. Eureka Security Fire & Marine Ins. Co., supra; Ogle Lake Shingle Co. v. National Lumber Ins. Co., 68 Wash. 185, 122 P. 990. Again no mention was made of one defendant issuing a policy for 5% of $200,000.00 and another 7½% of $200,000.00 provisional insurance. Furthermore, the facts as heretofore set forth reflect that the policies involved did not represent or purport to represent additional insurance but a percentage of a provisional risk of $200,000.00. Plaintiff already had 100% coverage with the National and if he had complied with the provisions of the National policy his entire loss would have been covered plus additional insurance of $25,000.00. There is no indication that the plaintiff sought to overinsure. I hold that there was no oral contract of insurance between the plaintiff and the defendants at the time of the loss. Toth v. Metropolitan Life Ins. Co., 123 Cal.App. 185, 11 P.2d 94; K. C. Working Chemical Co. v. Eureka Sesurity Fire & Marine Ins. Co., supra.

The plaintiff contends that the delivery of the policies and collecting of the premium after the loss creates an estoppel and the defendants are precluded from denying their liability under said policies.

If there were no valid contract of insurance in force at the time of the loss, the acts of the agent could not bring into being that which never existed. Estoppel cannot be pleaded as a defense to a nonexisting contract. 10 Cal.Jur. 623; 5 Cal. Jur.Supp. 585.

Insurance is defined in Sec. 22 of the Insurance Code of California as follows: "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event."

If I am correct in holding that no contract of insurance was in effect at the time of the fire, it would be beyond the authority of the agent to execute a valid contract of insurance after the loss. Crawford v. Trans-Atlantic Fire Ins. Co., supra; Royal Ins. Co. v. Smith, 9 Cir., 77 F.2d 157; Western Indemnity Co. v. Industrial Accident Comm., 182 Cal. 709, 190 P. 27; Hargett v. Gulf Ins. Co., 12 Cal.App.2d 449, 55 P.2d 1258.

Plaintiff seeks aid of Sec. 1559 of the Civil Code of California to the effect that "A contract, made expressly for the benefit of a third person, may be enforced by him". As in his affirmative defense of estoppel, counsel for plaintiff places his argument on a false premise, namely that valid contracts of insurance were in effect at the time of the loss.

Plaintiff's principal contention is that the acts of the agent Oelsner in delivering the policies of the two defendants and accepting payment of the premium subsequent to the loss, and the acceptance of said policies acted as a ratification. This brings us to the closest point of law involved. Plaintiff emphasizes the necessity of following the law of California under the rule of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487, and cites certain cases holding that ratification may occur after loss, contrary to the general rule. It is apparent that under certain California decisions by way of dicta, Yoder et al. v. Nu-Enamel

Corp., 8 Cir., 117 F.2d 488, an insurance contract may be ratified after loss, provided the agent procuring the insurance was the agent or representative of the insured. It will be noted in all cases cited by the plaintiff where ratification after loss was recognized, the agents whose acts were ratified were acting for and in behalf of the insured. Norwich Union Fire Ins. Soc. v. Paramount Famous Lasky Corp., 9 Cir., 50 F.2d 747; Phoenix Ins. Co. v. Hancock, 123 Cal. 222, 55 P. 905; Farrar v. Western Assurance Co., 30 Cal.App. 489, 159 P. 609, 611; Kleiber Motor Truck Co. v. International Indemnity Co., 106 Cal.App. 709, 289 P. 865. Unless Oelsner was acting for and in behalf of the plaintiff the doctrine of ratification is not applicable. In order to claim ratification plaintiff must establish that Oelsner was acting as his agent or in his behalf. Jones v. Bank of America Nat. Tr. & Sav. Ass'n, 49 Cal.App.2d 115, 121 P.2d 94; Valaske v. Wirtz, 6 Cir., 106 F.2d 450, 124 A.L.R. 893.

The test of whether ratification can come to the aid of the plaintiff depends upon the relationship existing between Oelsner and the plaintiff. The record in this respect reflects according to the stipulation of facts that Oelsner was the agent of the defendant insurance companies. That stipulation however would not preclude Oelsner from acting in a dual capacity. In the transcript of the previous trial at page 19, which is before me on these motions, the following colloquy occurred between the Court and counsel for plaintiff:

"The Court: There is a statement made this morning that I want to clarify. Counsel alleged that Mr. Oelsner was the agent of the insurance company. In your statement this morning you state he was also in effect the agent of the plaintiff.

"Mr. Marlin: No. I meant he was the agent of the—he was a binding agent of the company and that he had sold insurance to Mr. Gandelman.

"The Court: His customer?

"Mr. Marlin: Yes.

"The Court: But he was not acting in any way as agent for Mr. Gandelman?

"Mr. Marlin: That is right."

I therefore hold that the undisputed facts reveal that Oelsner was acting solely as the agent of the defendants and was not acting for or in behalf of the plaintiff.

I realize that the courts are unusually sympathetic to the causes of the insured and if a theory can be found that enables them to hold against the insurer, there is a tendency to do so. In the case at bar, the plaintiff is seeking to recover from the defendants for a loss occasioned by his own neglect in failing to comply with the terms of a policy, which, if they had been complied with would have afforded him full coverage. This is a case strictly at law and would have presented no problem except for the claim that additional insurance had been orally ordered and astute counsel has vigorously endeavored to accomplish through the medium of ratification to breathe life into his claim that there existed valid contracts of insurance.

As heretofore stated the motion of the defendants for a summary judgment is hereby granted and the motion of plaintiff for summary judgment is denied.