[Civ. No. 16308. First Dist., Div. One. May 19, 1955.]

CYRILLA BLOS, Appellant, v. BANKERS LIFE COMPANY (a Corporation) et al., Respondents.

Carroll F. Jacoby for Appellant.

Knight, Boland & Riordan, John H. Riordan and E. R. Hoerchner for Respondents.

PATTERSON, J. pro tem.*—Plaintiff appeals from a judgment of nonsuit in an action to reform and enforce a group insurance policy. The question presented is whether the policy should be reformed to show its effective date as of May 27, 1952, when Blos entered the hospital with an ailment causing his death on June 8, 1952.

On November 26, 1951, the board of directors of the Retail Grocers Association of San Francisco authorized its secretary to negotiate a group insurance policy covering its members. At the same meeting he was also appointed trustee of the insurance fund. As a result of negotiations an application was made on April 4, 1952, by the trustee on behalf of the association to defendant Bankers Life Company, for a group life insurance policy and a group hospital, surgical and medical expense policy. The provisions of both applications and policies affecting the points involved in this appeal are identical; so for convenience they will be considered as one.

The application provided the insurance should not become effective (a) unless the application was received and approved by the insurance company at its home office; (b) unless 75 per cent of the employees made a written request for the insurance; (c) as to any employee on a date on which he was not actively at work. It also provided that the effective date should be the date of issue shown on the policy, if issued.

On April 8th a bulletin was issued to the membership of the association. Pages 2 and 3 of the bulletin covered a statement of the benefits of the policy and were furnished by the insurance company. This portion of the bulletin contained the following language: "The Group Insurance Policy will become effective on the date that 75% of all eligible Members have enrolled." This is the representation upon which plaintiff relies for relief. The bulletin also contained the statement: "All benefits will be controlled by the Master Group Policy issued by Bankers Life Company and held by the Association. This bulletin is merely a description of benefits provided and is not a contract." The portion of the bulletin written by the trustee for the association contained this statement: "Please complete the application card, by filling in spaces indicated and mail it with your check payable to GROCERS' INSURANCE FUND. Your check will be held (not deposited) until the insurance goes into effect." There is no evidence in the record that the latter statement ever came to the atten-

---

*Assigned by Chairman of Judicial Council.

tion of the insurer. On April 26th William P. Blos signed a request for insurance together with a check for the first month's premium. On May 23d the association issued another bulletin to its members which stated that the plan would positively go into effect June 1st. On May 26th a third bulletin was issued which stated that the quota had been reached and that the plan would be effective as of June 1st. On May 26th the checks were deposited. Blos was at work on May 27th, on which date he entered a hospital. He did not return to work and died on June 8th. On May 29th a list of the members who had signed a request for insurance together with the first month's premium was turned over by the trustee of the association insurance fund to the local agent of the insurance company. He in turn sent them to the home office. The agent, called as an adverse witness, testified that on May 29th there was not a sufficient number enrolled to qualify and that others had to be sent in to reach the required number. On June 10th the insurer issued a policy with the effective date of June 1st. Among other provisions the policy provided that to be eligible a member must be actively at work on the effective date. If not at work on that date the policy would become effective on the first date thereafter when he was actively at work. The insurer refused payment on the policy on the grounds that the deceased was not actively at work on June 1st, the effective date of the master policy, or at any time thereafter.

The plaintiff insists that the policy automatically became effective as stated in the bulletin of April 8th when the 75 per cent quota was reached. This, she claims, occurred before May 27th, the last day on which the decedent worked.

Plaintiff urges that the trustee was the agent of the insurance company in the preliminary negotiations and that the statements made in the bulletins sent out by him to the members were binding upon the company. We do not agree with this contention. ■ The correct rule is stated by the Supreme Court in *Boseman* v. *Connecticut General Life Ins. Co.*, 301 U.S. 196 [57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732]. The court said (p. 204): "Employers regard group insurance not only as protection at low cost for their employees but also as advantageous to themselves in that it makes for loyalty, lessens turn-over and the like. When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may

serve to obtain and keep the insurance in force, employers act not as agents of the insurer but for their employees or for themselves."

Plaintiff relies upon the case of *John Hancock Mut. Life Ins. Co.* v. *Dorman,* 108 F.2d 220. That case did not, however, involve preliminary negotiations or statements. There the master policy had been in effect for several years and the court held that the employer was the agent of the insurer in delivering an individual certificate of insurance. There the employer was authorized by an express agreement to deliver the certificate, which contained terms not in its master policy, to the insured, and the court held that under those particular facts the contract was entered into in California instead of at the home office of the company.

Based upon the statement contained in the bulletin of April 8th plaintiff contends that the insurer is estopped to deny that the insurance automatically became effective on the date that 75 per cent of the eligible members had signed written requests for insurance. The plaintiff seeks by estoppel to make language in a preliminary statement a part of the policy although it is in conflict with the express provisions of the application and the policy itself. ▉ As a general rule the courts have held that an advertisement, pamphlet or preliminary statement issued for the purpose of soliciting insurance does not constitute a part of the contract where it is neither attached to the policy nor referred to therein. (*Toth* v. *Metropolitan Life Ins. Co.,* 123 Cal.App. 185, 188 [11 P.2d 94]; *American Can Co.* v. *Agricultural Ins. Co.,* 12 Cal.App. 133, 135 [106 P. 720]; *Fowler* v. *Metropolitan Life Ins. Co.,* 116 N.Y. 389 [22 N.E. 576, 578, 5 L.R.A. 805]; *Luellen* v. *New York Life Ins. Co.,* 201 Mich. 512 [167 N.W. 950, L.R.A. 1918F 340].) Section 10113 of the Insurance Code provides as follows: "Every policy of life, disability, or life and disability insurance issued or delivered within this State on and after the first day of January, 1936, by any insurer doing such business within this State shall contain and be deemed to constitute the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings, of either of the parties thereto or of any other person, unless the same are indorsed upon or attached to the policy; and all statements purporting to be made by the insured shall, in the absence of fraud, be representations and not warranties. Any waiver of the provisions of this

section shall be void.'' ▇ By statute the policy is the sole measure of the company's liability. It is for the protection of both the company and the policyholder. Neither should be permitted to show preliminary negotiations to defeat its operation. In considering the question of oral insurance the court in *American Can Co.* v. *Agricultural Ins. Co., supra,* 12 Cal.App. at page 135, said: ''In fact, it is the universal custom of insurance companies to issue written policies, with full and minute specifications as to their liability and the exceptions that would make the policy void. The preliminaries, as in contracts for the sale of real estate, are usually only negotiations which are afterward merged into the written contract.''

There is no element of fraud involved. The bulletin of May 23d, issued at a time when there is no contention that the quota had been reached, stated the insurance would be effective on June 1st. Also the bulletin of May 26th made the same statement. No policies had been issued on either date nor had the list of those who had signed been delivered to the insurance company. There was time to withdraw from the plan if the decedent was dissatisfied with the June 1st date. There was no change of position. ▇ Generally speaking, to work an estoppel a representation must be one of fact as distinguished from a promise of something to be done in the future. (*Rottman* v. *Hevener,* 54 Cal.App. 474, 480 [202 P. 329]; *Hosner* v. *Skelly,* 72 Cal.App.2d 457, 463 [164 P.2d 573].) ▇ In the Rottman case the court said (p. 480): ''It is the general rule that, to work an estoppel, a statement or representation made during the negotiations that terminate in a written contract must relate to an existing fact and not to a mere promise of future performance. The only exception to this rule is where the representation relates to the intended abandonment of an existing right. The doctrine of estoppel, therefore, has no place for application when the representation relates to rights depending upon contracts yet to be made to which the person complaining is yet to be a party. He has it in his power in such case to guard in advance against any consequences of a subsequent change of intention or conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions, parties must provide by stipulations in their contracts when reduced to writing.''

Section 10202.7 of the Insurance Code provides in part: ''. . . (b) The policy must cover at date of issue not less

than 75 per cent of the eligible employees of at least 50 per cent of the total employer members of the trade association . . ." This provision was made a condition to the issuance of a policy by the express terms of the application. There is no evidence in the record that the 75 per cent quota was ever reached at a time when the decedent was actively at work. ■ Plaintiff relies for proof upon two statements in the bulletins issued by the Grocers Association to its members. The first statement was that found in the bulletin of April 8th to the effect that the checks would be held and not deposited until the insurance went into effect, and the second statement was that the quota had been reached contained in the bulletin of May 26th. There was no evidence that either of these statements ever came to the attention of the insurance company. They were not issued by the company and are not binding on it. The only evidence on the question of when the quota was reached which would bind the company was the testimony of its agent, called as an adverse witness, who stated that the quota had not been reached on May 29th when a list of those who had signed was delivered to him. ■ The depositing of the checks on May 26th was an act of the association and in pursuance of an arrangement between it and its members. These checks were not at any time in the possession of the insurer nor did it have any control over when they were deposited. Acts of the association would not give rise to an estoppel on the part of the insurer.

Plaintiff makes some claim that there was an oral contract of insurance. However, we find no evidence in the record of any oral contract.

Viewing the evidence in the light most favorable to the plaintiff and drawing all inferences in her favor, we are of the opinion that there is no evidence upon which a reformation of the policy could be based.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.