INTERNATIONAL TRUST CO. v. NORWICH UNION FIRE INS. SOC.[1]

(Circuit Court of Appeals, Eighth Circuit. December 2, 1895.)

No. 662.

**1. REVIEW ON APPEAL—EQUITY JURISDICTION.**

When both parties assume in the circuit court that the bill stated matters of equitable cognizance, and the case was within the jurisdiction of that court, the circuit court of appeals can dispose of the controversy on its merits, though the relief sought might have been given in a suit at law.

**2. INSURANCE—RENEWAL OF POLICY—ESTOPPEL BY AGENT'S DECLARATION.**

When the agents of an insurance company, who are duly authorized to solicit and make contracts of insurance, deliberately represent to the assured that a given policy issued by the company has been renewed, and subsequently receive and appropriate money which they have good reason to believe is paid to cover the cost of such extended insurance, the company will be estopped, after a loss has occurred, to allege that the policy was not renewed.

**3. SAME—STATEMENTS BY AGENT'S CLERK.**

Acts done and information given by an employé of an agent of a company in the line of his duty is binding upon the company.

**4. SAME—INSURABLE INTEREST—PURCHASE OF MORTGAGE NOTE.**

A consummated agreement for the sale of a deed of trust and of a note secured thereby, which is in the vendee's possession, vests an equitable title in the vendee, so as to give him an insurable interest in the property covered by the deed, though the note is not indorsed by the vendor.

Appeal from the Circuit Court of the United States for the District of Colorado.

The International Trust Company, of the city of Denver, the appellant, sued the Norwich Union Fire Insurance Society, the appellee, to enforce the delivery and payment of a policy of insurance in the sum of $10,000 on an hotel building in the city of Pueblo, Colo., which was destroyed by fire on October 9, 1893. The bill of complaint alleged, among other things, that John R. Gordon, the owner of the insured property, on December 12, 1892, executed a deed of trust thereon to secure the payment of a note in the sum of $50,000, which was held by the International Trust Company, of the city of Denver, hereafter termed the "Trust Company"; that said note and deed of trust were subsequently sold by said trust company to the Investors' Mortgage Security Company, Limited, of Scotland, which company is here-

[1] Rehearing denied January 20, 1896.

after termed the "Mortgage Company"; that said note matured on June 12, 1893, and that said Gordon applied for an extension of the loan, whereupon the trust company repurchased said note and deed of trust from the mortgage company, and became reinvested with the title thereto.

The bill of complaint also averred that the Norwich Union Fire Insurance Society, the appellee, which is hereafter termed the "Insurance Company," on August 26, 1892, issued to John R. Gordon its policy of insurance on the hotel property in question in the sum of $10,000; that the policy was known as a "builder's risk," the hotel at the time being in process of erection; that by a mortgage clause which was attached to said policy on December 12, 1892, said policy became payable to the trust company and its assigns to further secure the aforesaid note in the sum of $50,000 that was then held by the trust company; that said policy remained in force until February 26, 1893, when it was renewed for another term of six months; that is to say, until August 26, 1893. The trust company further averred that when Gordon applied to it for an extension of the aforesaid loan it took the precaution to confer with the local agents of the insurance company at Pueblo, Colo., with a view of ascertaining whether the policy would be again renewed, and that it received assurances that it would be renewed on August 26, 1893, and thereafter continued in force with a mortgage clause attached for the benefit of the trust company; that on August 27, 1893, it received further assurances from the insurance company's agent at Pueblo, who was authorized to give such assurance and to issue policies, "that a renewal and extension policy had been actually executed and issued by the defendant, and was in process of being transmitted to the complainant company," and that it would keep the hotel insured for the benefit of said company, on the same terms as for the previous six months, until February 26, 1894. The trust company further alleged that on or about September 26, 1894, it paid to the insurance company, in compliance with its demand, the premium charged for the renewal of said policy from August 26, 1893, to February 26, 1894; and that from and after August 27, 1893, it was induced to believe that a renewal policy had been executed and was in force, although it did not in fact have possession of the same; that after the occurrence of the fire on October 9, 1893, the defendant insurance company for the first time alleged and claimed that the policy in question had not been renewed on August 26, 1893, and that it was not liable thereon.

In view of the premises, the bill prayed for the following relief, namely: That the court would "order, decree, and adjudge that at the time of the fire aforesaid there was a good, valid, and existing agreement of insurance by defendant company upon the property herein set out, with loss thereon payable to complainant company"; that it would furthermore "adjudge, order, and decree that defendant company shall deliver to complainant company the renewal policy of insurance, together with the mortgage or agreement clause thereto attached, issued on or about the 26th day of August, 1893, as * * * alleged, or that, in case said renewal policy of insurance shall have been canceled or destroyed, the same be declared in full force and effect, and binding upon defendant company, and that defendant company do specifically carry out, perform, and comply with all the terms and provisions of said renewal policy of insurance as the same existed after the issue thereof."

The answer to the bill of complaint admitted many of the allegations touching the issuance of the policy on August 26, 1892, to John R. Gordon, and the renewal thereof on February 26, 1893, with the mortgage clause thereto attached, making the same payable to the trust company and its assigns; but it denied, in substance, all the allegations which tended to show a renewal of said policy on August 26, 1893, and all the allegations tending to show an agreement to renew the policy on that date. It also denied that it received the premium for a renewal of the policy on August 26, 1893, or that the trust company reacquired the note and deed of trust of the mortgage company prior to August 26, 1893, as was charged in the bill of complaint. By way of special defense, the defendant company further pleaded that John R. Gordon sold the insured property on July 3, 1893, to the Mesa Hotel & Improvement Company without its knowledge or consent; that by virtue of

such sale said Gordon ceased to have an insurable interest in the property, and that the renewal policy of August 26, 1893, with the mortgage clause attached, even if such policy was in fact issued or agreed to be issued, thereby became void. The circuit court dismissed the bill, and the case was brought to this court by appeal.

A. C. Campbell (A. E. Pattison was with him on the brief), for appellant.

Sylvester G. Williams and M. F. Taylor (E. T. Wells and John G. Taylor were with them on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

No question was raised in the circuit court, nor has any question been raised in this court, touching the right of the complainant to maintain an action at law, and for that reason it is unnecessary to inquire or decide whether, on the state of facts disclosed by the bill of complaint, a court of equity or a court of law was the proper forum. Both parties have assumed that the bill stated matters of equitable cognizance, and, as the case was one within the general jurisdiction of the circuit court, there can be no doubt of our right to dispose of the controversy on its merits, even though it was probable that the complainant might have maintained a suit at law to enforce the alleged contract of insurance. Reynes v. Dumont, 130 U. S. 354, 395, 9 Sup. Ct. 486; Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340. We proceed, therefore, to consider the case on its merits, and the question of chief importance seems to be whether the defendant company can be heard to say that it did not renew or extend the policy of insurance on the hotel property in question, which expired on August 26, 1893. The decision of this question depends largely upon conclusions of fact to be drawn from the testimony; and, as the testimony is voluminous, and in some respects conflicting, we shall content ourselves with a brief statement of our findings on the material issues of fact raised by the pleadings.

It admits of no doubt that on or about June 14, 1893, Henry W. Hobson, the vice president of the trust company, received positive assurance from the local agents of the defendant company at Pueblo, Colo., that the existing policy on the hotel property, which had been theretofore issued by the defendant insurance company, would be renewed on the coming 26th day of August, 1893, and that the existing insurance would be continued in force for the trust company's benefit as long as the premiums were paid. This assurance did not, as a matter of course, bind the defendant company to issue a renewal policy if it subsequently changed its mind and elected not to do so, but it undoubtedly had the effect of preventing the trust company from applying for insurance elsewhere. The testimony also shows to our entire satisfaction that Frank B. Gibson, the secretary of the trust company, was in the city of Pueblo, Colo., on or about August 29, 1893; that he called at the local office of the defendant company for the express purpose of ascertaining if the risk now in controversy had been renewed, and was there informed

by William B. Shepard, the person in charge of the office, that the policy in the defendant company that had expired on August 26, 1893, had been renewed on that day, and continued in force, and that the interest of the trust company as mortgagee was thereby covered and protected. On the same occasion directions were given by said Gibson to forward the renewal policy to the trust company at Denver, Colo., and he undoubtedly left the office of the insurance company with the understanding that the renewal policy would be so forwarded. It is an admitted fact that prior to this interview a renewal policy had been made out and countersigned by the local agents of the defendant company, which renewal policy was duly entered at the time on the policy register of the company that was kept at the local office. Such renewal policy only lacked a formal delivery to render it operative as a binding contract between the parties.

But a more important circumstance remains to be noticed. On or about September 13, 1893, the trust company was advised by a letter written on that day by John R. Gordon, who was the owner of the hotel property in question, that he owed Benson & Kirtland, the local agents of the defendant company at Pueblo, about $280 on account of premiums for insurance upon said hotel property; that he was himself unable to pay the amount of such indebtedness; and that, unless the trust company advanced and paid the same, the policies covering the property that had been issued by Benson & Kirtland would be speedily canceled. Thereupon the following correspondence took place between the trust company and Messrs. Benson & Kirtland, the local agents of the defendant company:

"International Trust Company.
"Offices: Nos. 1, 2, and 3, Tabor Block.
* * * "Denver, Colorado, September 16, 1893.

"Messrs. Benson & Kirtland, Pueblo, Colo.—Gentlemen: In reference to the Gordon insurance, I would suggest that you let it stand until I go down to Pueblo next week, when some definite arrangements will be made on the subject. I suppose, if Mr. Gordon does not pay, that I will have to do so. It will be a favor to me if you will not cancel the policies, as it will necessitate my renewing them up here.

"Yours, truly, Henry W. Hobson, Vice Prest."

"Benson, Kirtland & Co.
* * "Pueblo, Colorado, September 18th, 1893.

"Mr. Henry W. Hobson, Denver, Colo.—Dear Sir: Your letter of 9–16 received, and in reply will say that we will do our best to carry the hotel insurance for you; will at least keep you covered under the policies you now have until you come to Pueblo; and trust that some arrangement can then be made for the payment, as our companies are crowding us for the money.

"Yours, respectfully, Benson, Kirtland & Co."

"Benson, Kirtland & Co.
* * * "Pueblo, Colorado, September 23, 1893.

"The International Trust Company, Denver, Colorado—Gentlemen: I inclose herewith statement of balance due for insurance on Mesa Hotel, as requested by Mr. Hobson. Trusting this will receive your early attention, we are,

"Yours, respectfully, Benson, Kirtland & Co."

"International Trust Company.

"Offices: Nos. 1, 2, and 3, Tabor Block.

\* \* \* "Denver, Colorado, September 26, 1893.

"Messrs. Benson, Kirtland & Co., Pueblo—Gentlemen: Inclosed find check for $282.00 in payment of within bill. Be kind enough to make out an itemized bill showing what the insurance is for, and policies. I would also call your attention to the fact that we ought to have from your company $40,000.00 insurance, whereas we only have $30,000.00. According to our insurance record, we have a policy in the Norwich Union for $10,000.00, which expired August 26th, and Mr. Gibson says that when he was down there you told him you would send up the renewal immediately. There is another policy which we hold in the National Assurance Company which seems to have expired September 8th, so that at present we only have $20,000.00 in force with you, or rather only have policies for that amount. Will you please write an explanation of this at once, so as we can know how the insurance stands?

"Yours, truly, Henry W. Hobson, Vice Prest."

The foregoing letter inclosing a check for $282 was duly received by the local agents of the defendant company. The check contained was accepted and collected by them, but they neither acknowledged the receipt of the letter prior to the fire nor transmitted an itemized bill, as they were requested to do. When the foregoing correspondence between Benson & Kirtland and the trust company took place, John R. Gordon was only indebted to Benson & Kirtland in the sum of $220 for insurance obtained through their agency on the hotel property in question, if the premium for the renewal of the defendant company's policy on August 26, 1893, is excluded from the estimate. But, if the cost of renewing that policy for six months at the rate theretofore charged is added to the estimate, Gordon's indebtedness to Benson & Kirtland on account of premiums for insurance on said property amounted to about $280 on September 23, 1893, when the letter of Benson & Kirtland, inclosing a statement of Gordon's account with them, was transmitted to the trust company. On the receipt of the trust company's check for $282, Benson & Kirtland appropriated $63 thereof to the payment of premiums for insurance on other property owned by Gordon in which the trust company had no insurable interest. The residue of the money was used to pay premiums for insurance on the hotel property, in which the trust company, as mortgagee, did have an insurable interest; but the majority of the policies to which the money was thus applied had expired prior to September 26, 1893, and were no longer in force for the trust company's protection. Now, the pretended statement of Gordon's account contained in the letter of September 23, 1893, supra, was in the following form: "To balance due on insurance, $282.00," and it was practically admitted by John H. Kirtland, who was a witness for the defendant, and also a member of the firm of Benson & Kirtland, that the account was cast in that form at the instance and request of John R. Gordon, for the express purpose of concealing from the trust company what premiums were included in the bill, and how the money received thereon was to be applied. In other words, the evidence warrants the conclusion that Benson & Kirtland became privy to a scheme whereby money was to be obtained from the trust company ostensi-

bly to pay for insurance on the hotel property, but in reality to pay for insurance on property in which the trust company had no interest. It was further admitted by the same witness (John H. Kirtland) that the itemized account called for by the trust company's letter of September 26, 1893, was intentionally withheld by him to further conceal from the trust company that the money by it forwarded to pay for insurance on the hotel property had been in part diverted to other uses. The evidence, as we think, fully justifies the conclusion that the itemized account called for was also withheld by the local agents for another reason, namely, to conceal the fact that the money received from the trust company had not been appropriated to pay for the renewal of the defendant's policy, which expired on August 26, 1893. It only remains to be said that the trust company was doubtless deceived and misled to its prejudice both by the representations made by the defendant's local agents that the risk upon the hotel property would be and had been renewed on August 26, 1893, and by the concealment practiced in the respect last above stated. The trust company undoubtedly believed, and with good reason, that the defendant had renewed the policy which had expired on August 26, 1893, and that the bill sent to it, on September 23, 1893, which was subsequently paid, covered the cost of such renewal.

On this state of facts the conclusion is inevitable that the defendant company cannot be heard to say that the policy in question was not renewed, whatever may have been its intention in that regard. When the agents of an insurance company, who are duly authorized to solicit and make contracts of insurance, deliberately represent to the assured that a given policy issued by the company has been renewed, and subsequently receive and appropriate money which they have good reason to believe is paid to cover the cost of such extended insurance, the company will be estopped to allege, after a loss has occurred, that the policy in question was not renewed. To hold otherwise would be to lend judicial sanction to a fraud.

It was suggested in argument, and some reliance seems to be placed on the suggestion, that, inasmuch as the statement that the policy in controversy had been renewed was made by William B. Shepard, who was an employé of Benson & Kirtland, the defendant company is not affected or bound by that representation. The facts with reference to this contention seem to be that Shepard was a confidential employé and bookkeeper of the firm of Benson & Kirtland, and had been in their service some years. He was fully posted as to the details of the business carried on by the firm, and in their absence had full charge of the office, and was undoubtedly authorized by them to give information as to whether a particular policy that had been registered on the books of the agency had or had not been renewed. Besides, we think that the evidence in the case would fully warrant the inference that Shepard had authority, in the absence of the members of the firm, to negotiate contracts of insurance; and that he did at times exercise such authority. But, be this as it may, the evidence in the case at bar shows that the statement made by Shepard to Gibson that the policy in question had been renewed

was made in the company's office while Shepard had charge of the same, and while he had the custody of the policy register. The statement was made in the line of his duty, not in answer to an idle inquiry, but in response to a question asked by a policy holder, who was interested in knowing if a certain policy had been renewed and continued in force. It does not follow that, because a person is employed by an agent of an insurance company rather than by the company itself, none of such person's acts or representations are binding on the company. It is customary for agents having charge of important agencies to employ persons to perform clerical and much other work in their office, and to assist them generally in the discharge of the various duties which such agents have to perform. The business of insurance could not well be transacted without such assistants, and all insurance companies are doubtless well aware of the practice of employing them. It results from this well-known business usage that acts done and information given by such subordinate employés in the line of their duty should be held binding upon the companies which they represent. We think, therefore, that presumptively Shepard had authority to inform Gibson whether the policy now in question had or had not been renewed, and that the statement made by him should be given the same effect as if it had been made by either Benson or Kirtland.

Another defense that is urged in this court, although it was overruled by the circuit court, is, in substance, that the trust company had no insurable interest in the hotel property in question on August 26, 1893, even if it was true that the policy in controversy was on that day renewed or extended. This claim is based on the assumption that the trust company did not reacquire the Gordon note and deed of trust from the Investors' Mortgage Security Company until some time after August 26, 1893. The facts pertinent to this defense, as we find them, are these: Pending the negotiations between Gordon and the trust company to obtain a renewal of the loan, and after it became apparent that Gordon would not be able to meet his obligation, the trust company, by a letter written on June 13, 1893, proposed to the mortgage company to repurchase the note and deed of trust which it had previously sold. The proposition as made required the trust company to advance the money to take up the note within 60 days, or prior to August 12, 1893, the note being then in the hands of the trust company, and held by it for collection. At the same time the trust company advanced and paid to the mortgage company the accrued interest on the note, to wit, $1,750. By a telegram and letter dated, respectively, on June 26 and 28, 1893, acknowledging the receipt of the trust company's proposition, the mortgage company accepted the proposition to sell the note, but gave the trust company more time than it asked—that is, until September 15, 1893—to pay for the note. This latter proposition of the mortgage company was accepted by the trust company, immediately on the receipt of the mortgage company's telegram, by a letter written to the mortgage company on June 26, 1893, and the agreement to purchase the note thus became complete. Now, while it may be true that the legal title to the paper was not vested in the trust company on June

26, 1893, or even on August 26, 1893, in the sense of the law merchant, or in such way as to cut off equities of defense, because it had not been indorsed by the mortgage company, nevertheless, as the agreement of sale was complete, and the note was in the hands of the trust company, there can be no doubt that the trust company had a good, equitable title to the paper on August 26, 1893; such a title, in fact, as would have enabled the trust company to maintain an action at law on the note in the courts of Colorado, whose Code provides that "every action shall be prosecuted in the name of the real party in interest." Code Civ. Proc. c. 1; § 3. A consummated agreement of sale, such as is shown by the correspondence in the present case, especially where the thing sold is in the possession of the vendee, operates to transfer the title of the article or thing sold to the purchaser. Under these circumstances we have no doubt that the trust company had an insurable interest in the hotel property in controversy on August 26, 1893, and the contention to the contrary is, in our opinion, without merit.

It seems evident from an inspection of the record, that the case at bar was fully tried by the circuit court, and that all the material facts on which the defendant company could hope to predicate a successful defense to the action were fully developed by the testimony, and that all known defenses were in fact interposed. Such being the case, there seems to be no occasion for a new trial or a rehearing. The decree of the circuit court will, accordingly, be reversed, at the cost of the appellee, and the case will be remanded to that court, with directions to vacate its former decree, and in lieu thereof to enter a decree in favor of the complainant below, which shall adjudge and determine that on October 9, 1893, the complainant company held a good and valid policy of insurance in the defendant company for the sum of $10,000, covering the hotel property in question, which, by virtue of its terms and provisions, was payable in case of loss to the complainant company; that complainant is entitled to recover thereon from the defendant insurance company the sum of $10,000, with interest at the rate of 8 per cent. per annum from December 15, 1893, together with all costs that have accrued in the circuit court; and that unless said debt, interest, and costs are paid by the defendant company to the complainant within 20 days after the entry of such decree, an execution be awarded against the defendant company in the ordinary form.