[Civ. No. 5091.  First Appellate District, Division Two.—March 14, 1925.]

## H. S. SMITH, Respondent, v. MASSACHUSETTS BOND-ING AND INSURANCE COMPANY (a Corporation), Appellant.

[1] INSURANCE—ORAL CONTRACT—ACTION TO RECOVER MONEY DUE—SUBSEQUENT WRITTEN CONTRACT — PLEADING—EVIDENCE.—In this action to recover a judgment for moneys claimed to be due under an alleged oral contract of insurance covering certain trucks and the trailers used in connection therewith, the complaint having been predicated upon the oral contract of insurance alleged to have been in effect at the time of the accident, and not upon the written contracts subsequently issued and which covered the trucks only, plaintiff was not required to maintain an action to reform such written contracts and to pray for relief upon the written contracts as reformed, and parol evidence was admissible to prove the terms of the oral contract; and the written contracts of insurance issued subsequent to the time of the accident were admissible for the purpose of showing the terms of the oral contract of insurance contended for by plaintiff.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  Walter Perry Johnson, Judge.  Affirmed.

The facts are stated in the opinion of the court.

---

(1) 13 C. J., p. 768, n. 6, 7; 22 C. J., p. 1283, n. 93.

Thomas, Beedy & Presley for Appellant.

G. C. Ringole, Henry H. Hauser and Samuel Hamburg for Respondent.

STURTEVANT, J.—The plaintiff, as assignee, commenced an action against the defendant to recover a judgment for moneys alleged to be due under an alleged oral contract of insurance. The jury returned a verdict in favor of the plaintiff and the defendant has appealed.

Prior to July 26, 1920, B. C. Martin and M. P. Martin, doing business under the name of Martin Bros., were engaged in operating automobile trucks and trailers in transporting milk from Santa Clara and the adjacent neighborhood to San Francisco. Shortly prior to that date an accident occurred that resulted in an insurance adjustment being made by and through Burdette A. Palmer. On the date last mentioned Mr. Palmer called upon Martin Bros. and held a conversation with M. P. Martin. At the time of holding that conversation, and until after the Swanson accident, which will hereafter be adverted to, it is the uncontradicted evidence that Mr. Palmer was an insurance solicitor and adjuster of insurance for the firm of Goodwin, Klinger & MacKay, and that that firm was the general agent of the Massachusetts Bonding and Insurance Company in the transaction of the automobile department of that company's business on the Pacific coast. When Mr. Palmer called on Mr. Martin a conversation was had looking toward the taking over of the automobile insurance business of Martin Bros. As he represented indirectly the appellant we shall take the story as testified to by him.

Mr. Palmer testified that he held the conversation with Mr. Martin at San Jose in the presence of Mr. Martin's sister. "I made the trip down there at the request of Mr. MacKay, a representative of Goodwin, Klinger & MacKay. I went down there on an adjustment of a loss and the soliciting of business. I went down to adjust a loss on a truck which Mr. Martin had and to solicit additional business in the insurance line on the trucks which were not covered. This visit was made in the latter part of July. I adjusted the loss on Mr. Martin's car and naturally brought up the ques-

tion of full coverage in a collision, as he was not covered in his present policy. His trucks were covered but that is with what is known as a one hundred dollar deductible collision policy and naturally Mr. Martin was very much disappointed. He had to stand $100 of the loss and then I explained to him the features of the full coverage clause. A full coverage clause amounts to this, that in case of a loss he would not have to lose a cent himself but that the company would have to assume the entire liability. This was on his Packard truck, the Reo truck and also two trailers which were operated in conjunction with the two trucks in hauling loads to San Francisco. The trailers were attached to the rear end of the trucks. I solicited full coverage in collisions, features which we decided upon, depending on the rates. I then solicited property damage and public liability, and not having the rate manual with me I telephoned to Mr. Tompkins in San Francisco. Mr. Tompkins is at the counter and is what is called the underwriter of Goodwin, Klinger & MacKay, or the office manager, and he quoted all the rates. Mr. Martin gave me the numbers of the Packard truck and also of the Reo truck. We looked for the numbers on the Trailmobile and on a Reliance trailer. We could not locate any number on them and I came back to San Francisco. He explained how he was using those trucks and those trailers, that they were being worked in conjunction and that he would hook up a trailer on the rear of his truck. He told me the number of gallons of milk that he could carry on the truck and the number of gallons of milk that he could carry on the trailer. I don't remember which truck was for which trailer, but I believe that Mr. Martin operated two trucks and he had the two trailers and if he would pull off one truck he would use the other one and he would hook it on with either of the trailers, if one of the trailers was undergoing minor repairs. I asked Mr. Martin how many men he carried on these trucks and he told me that there was always two drivers so that in case one man fell asleep the other man would be there to handle it.

"That is about all of the conversation with the exception that Mr. Martin was insured, he received full coverage; he was covered. He was absolutely insured. I told him that he had a full coverage collision insurance on his trucks and

on his trailers. The amount was $5,000 for injury to one person and $10,000 as the maximum injury to two persons or more. I told him it would not make any difference if he had truck number one hooked to the Trailmobile and then if truck number one was laid off and truck number two was put into service, that we were taking care of those trucks and trailers and they would be protected, that the truck and the trailer attached were jointly insured. When I returned I took the insurance right into the office of Goodwin, Klinger & MacKay. There I saw Mr. Tompkins—he was at the desk. I filed a written application. I made it. That paper is not now available, you will remember that Mr. Klinger testified the application is lost. On that written application was the make of the truck, whether a Packard or a Reo, and the style of the trailer and the year in which manufactured, the tonnage of the truck and the general extinguisher, etc., and the names of the Martins and their address, and the general use in which the trucks were to be put. The collision was changed from a $100 deductible to collision on each one of the trucks and they fully covered the trailers, they had property damage on each truck and public liability on each truck. They had property damage on each trailer and I believe that at that time that I wrote that, that covered both trailers and I took those applications into the office to Mr. Tompkins and verified the numbers of the trucks both the motor numbers and the serial numbers and the capacity, and checked that up with the manual to see that the motor numbers corresponded with the year in which they were manufactured and also with the capacity. I got down to the trailers and on those there were no numbers—no serial number or motor number. Those are supposed to be the same as the automobile equipment and I told Mr. Tompkins that I was not able to get the serial numbers but he said that he would carry them for me and if possible I was to get the serial numbers even if necessary to make another trip to San Jose to get them. Mr. Tompkins said that he would carry them that the whole equipment was covered from then on and that on my next trip to San Jose I was to secure those numbers on both of those trailers, the Trailmobile and the Reliance trailer. He accepted the application to cover the trucks and to cover with us means for a period of a year.

Nothing was said at that time with reference to the length of time of that oral coverage. Nothing was said at that time as to when I should go to San Jose to get the numbers of the trailers. I made a second trip to Santa Clara. I saw M. P. Martin and B. C. Martin on the occasion of that visit. I had a conversation with them concerning this insurance at that time and place. I said to Mr. Martin that I wanted to get the numbers off the trailers and then we again tried to find the numbers. We looked every place we possibly could but we couldn't find them. Then Mr. Martin finally succeeded in getting those numbers off an old policy or a bill of sale which he had and then those numbers were turned in to Mr. Tompkins. They were turned in by me some time in the first part of August.

"The amount of the premium agreed to between Mr. Martin and myself I have forgotten. It was some place in the neighborhood of $1,000 for the whole coverage, that is for the public liability, property damage and the additional feature of collision insurance."

The story above recited is confirmed in every material detail by the testimony of Manuel P. Martin, one of the members of the firm of Martin Bros., and the individual with whom Mr. Palmer held his conversation.

At 12:30 midnight on the morning of August 9, 1920, an accident occurred between one of the trucks and trailers and an automobile being operated by Emil J. Swanson, and a little later during the same morning Martin Bros. called up the office of Goodwin, Klinger & MacKay, and spoke to Mr. Palmer over the telephone and advised him of the accident, whereupon Mr. Palmer replied, "All right, Mr. Martin, I will take care of you."

Communications between Martin Bros. and the defendant and the agents of the defendant are not called to our attention again until the month of January, 1924. During that month a summons and complaint was served on M. P. Martin. Thereupon Mr. Martin called up Mr. Palmer on the phone, made an appointment with him, and thereafter came to San Francisco. On arriving here he met Mr. Palmer and Mr. Tompkins and they went upstairs into the office of Mr. Hill, who was the attorney of the appellant. Mr. Potwin, the authorized agent of the appellant, was also

present. Mr. Martin testified: "They first began to read the policy to me—I just can't recall whether it was Mr. Hill or Mr. Potwin who read the policy, I can't say just what one read the policy. *Prior to that time I had not received any policy from the Massachusetts Bonding & Insurance Company, the defendant in this case.* . . . I didn't think it was just right and I came down and I went home. The next day I hired Mr. Hauser as my attorney and we went back. Mr. Tompkins, Mr. Hauser and myself went upstairs to the office of the Massachusetts Bonding Company *and at that time we got the policies.* Mr. Hill and Mr. Potwin were there. Mr. Hill handed the policies to Mr. Hauser and remarked, 'We refuse responsibility.' "

As recited above, in January, 1924, a summons and complaint was served on M. P. Martin. The portion of the record showing whether or not *that* summons and complaint issued in the action of *Swanson* v. *Martin* has not been called to our attention. We assume they did, because the record is clear that after the accident above mentioned as occurring on the night of August 9, 1920, Swanson commenced an action against the Martins and thereafter recovered judgment in the sum of $8,000 and $1,062 as costs, and that thereafter the Martins settled the judgment for the sum of $5,500, and then commenced this action to recover under their alleged oral contracts of insurance.

[1] The policies above mentioned were numbers 121,800 and 121,811. The respondent produced them in court and offered them in evidence for the purpose of showing the terms of the oral contract of insurance as contended for by the respondent. The policy number 121,811 covers the Reo truck hereinabove mentioned, and so far as has been called to our attention squares with the oral testimony hereinabove recited. Policy 121,800 covers the Packard truck. Same remark. But in violation of the oral agreement as contended for by the respondent, neither of the policies contained any reference to the trailers. In pleading his case the respondent treated the two policies as being the contract between the parties in so far as the trucks were concerned and he pleaded that the parties had orally agreed to insurance as to the trailers, the language being identical with that of the policy

on the trucks and that the policies should have been issued accordingly. In reply to this contention the appellant takes the position that the respondent should have maintained an action to reform the policies and in that action should have prayed for relief under the contracts as reformed. Failing so to do, it is the position of the appellant that nearly all of the evidence offered by the respondent was objectionable because the respondent was attempting to vary the terms of a written instrument. The vice in that contention is that it assumes that there was a written instrument. The liability of the appellant rests on its contractual relations as they existed at 12:30 midnight August 9, 1920— the date of the accident. At that time the uncontradicted testimony is to the effect that Martin Bros. were fully covered, both as to trucks and trailers, under and pursuant to an oral contract. There was no writing, hence the objection that the respondent was attempting to vary the terms of a written instrument was not well founded. True it is that subsequently policies were issued on trucks and that as far as they went they truly stated the contract. However, as no collision occurred between a truck and any other vehicle we are not concerned as to whether the trucks were insured or otherwise. As pieces of evidence admissible for the purpose for which they were offered, the policies were clearly admissible and the trial court did not commit any error in admitting them in evidence.

We find no error in the record. The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

Appellant's petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 11, 1925.

All the Justices concurred.