[Civ. No. 3125. Fourth Dist. Apr. 6, 1944.]

GLORIA STANLEY et al., Respondents, v. COLUMBIA CASUALTY COMPANY (a Corporation), Appellant.

Ray W. Hays, William M. Miles and Redman, Alexander & Bacon for Appellant.

G. L. Aynesworth, Frank W. Creely and Harry M. Gross for Respondents.

BARNARD, P. J.—This is an appeal from a judgment based upon an oral contract of insurance.

In February, 1940, the defendant issued a policy of automobile liability insurance to Sergio Delecce of Fresno which ran for one year and expired on February 15, 1941. It insured a Chevrolet 1½-ton truck for property damage liability, and for bodily injury liability limited to $5,000 for each person and $10,000 for each accident. The policy covered Delecce and any other person using the automobile, but excluded coverage "while the automobile is used for the towing of any trailer not covered by like insurance in the company" and also while the automobile "is being driven and/or operated by Sergio Delecce." The policy was countersigned by Marie Gable as authorized agent of the company. The insurance was renewed and a new policy with like terms issued to expire on February 15, 1942, but the new premium not being paid that policy was canceled on May 20, 1941. In August, 1941, negotiations were had between the parties which led to the alleged agreement on which this action was based. In the meantime this 1½-ton truck had been converted by Delecce into what is known as a truck and semi-trailer, being one vehicle.

The truck and semi-trailer was used in the business of Sergio Delecce in transporting produce between Fresno and San Francisco, and other points. On August 29, 1941, while the truck was so being used and driven by one Lanotti, an agent of Sergio Delecce, Sergio's son Joe being also on the truck, it collided with an automobile in which one Leo Stanley was riding as a passenger. Stanley suffered injuries caus-

ing his death. His wife and daughter, the plaintiffs herein, recovered a judgment against Lanotti for $10,000, with costs. The present action was brought to recover the amount of that judgment from this defendant on the theory that it had orally agreed to insure Sergio Delecce and his agents against such a liability. The complaint alleged that on or about August 16, 1941, Sergio Delecce was the owner of an automobile truck; that on or about that date the defendant, through its agent Marie Gable, and upon Sergio Delecce's promise to pay later the regular premium therefor and which he did pay, made and entered into an oral agreement wherein and whereby the defendant agreed for a period of one year to indemnify Delecce and any person driving his truck as his agent against liability not exceeding $10,000 for one person and $20,000 for one accident, with costs and interest; and that this agreement was in force at the time of this collision on August 29, 1941. A jury returned a verdict in favor of the plaintiffs and the defendant has appealed.

It is first contended that the respondents did not prove that Marie Gable had authority to bind the appellant by an agreement of insurance. This contention is without merit. She had been associated for some years with an insurance agency in Fresno known as "Roberts Insurance Agency." Delecce had dealt with her and taken insurance from her for years. The policies in the appellant company were written in San Francisco and sent to Fresno, where they were countersigned by Miss Gable and delivered. The policy issued to Delecce in 1940 was thus countersigned by her. In August, 1939, the appellant had filed with the Insurance Commissioner of this state a document appointing Miss Gable to act as its agent within this state and this authorization remained in force up to the time of the trial. Another document had been filed also appointing the Roberts Insurance Agency as its agent. Miss Gable was also licensed by the Insurance Commissioner to write lines of insurance other than life, and a full authority to bind the appellant was shown.

It is next contended that the evidence is not sufficient to prove an oral agreement of insurance between Sergio Delecce and the appellant. Joe Delecce testified that he was the son of Sergio Delecce; that his father spoke very little English; that he transacted his father's business, in-

cluding the insurance business; that in August, 1941, he had a telephone conversation with Marie Gable about insuring the truck; that he told her he wanted full coverage on it and she said "I will cover it fully from today"; that she said to come up and make a payment on it as quickly as possible; that he and his uncle, Pete Delecce, went to her office on August 23, 1941; that they told her they "wanted insurance, wanted full coverage"; that they "wanted 10 and 20" and also wanted fire and theft; that the question of premium came up and she wanted some money; that they said they would give her what they could; that they gave her a check for $150; that Miss Gable said the insurance would be effective from the date he phoned her; that she asked what company they wanted the insurance in; that it had previously been in the Columbia Casualty Company, and they told her they wanted it in the same company; that they wanted it in the "old company"; that she said she would try to get it for us; that they had had insurance with her for some years and their transactions were always with Miss Gable; that they never got their policies at the time they applied for them but got them two or three days later; that they would go in, she would ask what they wanted, they would tell her what they wanted and she would say it would go into effect as soon as we would leave the office; that he reported these conversations to his father; that after the accident he called Miss Gable on the phone and told her they would need an adjuster; that she said she would get one as fast as she could; that later, on the morning of August 20, they went to the office and Miss Gable asked them for more money; that they gave her another check for $100; that they asked her about the policy and she said it should be in on the 11 o'clock mail or would be on Monday; that Miss Gable made no statement at any time that they did not have insurance with the Columbia Casualty Company; that she sent them to an attorney's office, where they gave a statement about the accident; that later he got a letter from this attorney dated September 10, 1941, denying liability; that this was the first information they had received that it was claimed there was no insurance; that later they got a letter dated September 27, 1941, written by the Roberts Insurance Agency; and that his father did not owe for any policies other than the one written by the appellant in February, 1941, and which was canceled on May 20, 1941.

Pete Delecce testified that he went to Marie Gable's office on August 23, 1941, with his nephew Joe Delecce; that he told them to put the insurance on the truck to Sergio Delecce; that he told them to put in full coverage in the old company and told them the amount was to be $10,000 and $20,000; that they said all right and that Miss Gable said: "All right. I got it"; that after the accident he again went to the office with Joe Delecce; that Miss Gable told him the policy should have been in before and that if it did not come that day "it may come tomorrow"; that she asked him for another $100 and he gave her a check for that amount. The respondents introduced in evidence a check for $150 dated August 23, 1941, payable to "Roberts Ins. Agcy," which check was paid on August 29, 1941; also a receipt for $150 dated August 23, 1941, marked "on acct" and signed by Roberts Insurance Agency by Miss Gable; also a check for $100 dated August 30, 1941, payable to "Roberts Ins. Agcy" which was paid on August 30, 1941, and a receipt of the same date for $100 "on acct" signed by Roberts Insurance Agency, by Miss Gable. A letter from the Roberts Insurance Agency to Sergio Delecce, dated September 27, 1941, was introduced in evidence which begins:

"Inasmuch as we are unable to place the Public Liability and Property Damage Insurance; as well as the fire, theft and $25.00 Deductible Collision Insurance on your Chevrolet Truck and Trailer, requested by you from our Fresno Branch Office, we are enclosing herewith our check in the amount of $104.84."

The letter then states that this represents the proceeds of the $250 paid on August 23 and August 30, and that they had deducted $145.16 to cover an earned premium on a Columbia policy in the sum of $66.25 and $78.91 for premiums on two policies in other companies. However, Joe Delecce testified that they owed no amounts to this agency other than the earned premium on the Columbia policy canceled in May, 1941.

While Marie Gable denied most of the material testimony given by Joe and Pete Delecce, she testified that Joe Delecce phoned to her in June, 1941, and asked about insurance, and that at that time and on August 23, 1941, she had told them that if they would pay up all back amounts and the full cost of a policy she would attempt to secure a policy for them, but that she had never agreed that a policy would be issued

or told them that insurance was effective. She also admitted that she had some conversation with Joe and Pete on August 23, 1941. While she also testified that nothing had been said about a coverage of $10,000 to $20,000 in place of $5,000 or $10,000 or full coverage or about fire and theft, the testimony of the other witnesses is somewhat confirmed by the letter from the Roberts Insurance Agency dated September 27, 1941, which starts out by referring to public liability and property damage insurance, as well as fire, theft and collision insurance on a Chevrolet truck and trailer. This includes most of full coverage and the term "full coverage" is pretty well understood. The jury had a right to believe these other witnesses and their testimony, with the documentary evidence and the rather complete proof that $250 was demanded and accepted, part of which was paid after the accident occurred, is sufficient to show all the material elements of a binding contract insofar as the liability in question is concerned. It appears beyond question that Miss Gable collected much more than was due even under the contentions of the Roberts Insurance Agency, and the amount collected corroborated the testimony of Joe and Pete Delecce to the effect that they asked for an increase in coverage from $5,000 and $10,000 to $10,000 and $20,000. Miss Gable seems to have been in no doubt as to what company the insurance was to be in since she testified that she took the matter up with the appellant and that she wrote a second letter to them on August 28, 1941, inquiring as to what was being done in the matter.

The appellants further contend in this connection that the parties could not have had in mind the old policy which was canceled in May, 1941, for some of the details, otherwise the purported oral contract would have been void because that policy contained clauses excluding any insurance while the vehicle was towing a trailer, and also while it was being driven or operated by Sergio Delecce. It is argued that the vehicle in question, which was involved in the accident, was a truck and semi-trailer and violated that provision. It was one vehicle and was not towing a trailer and the evidence justifies the inference that Miss Gable understood the full situation and that a larger premium was charged on that account. ▆ It is also argued that because the complaint alleged that on August 29, 1941, Sergio Delecce was, through his agent Lanotti, operating and driving this truck upon a

highway the case is brought within the clause in the former policy excluding insurance while the automobile "is being driven and/or operated by Sergio Delecce." The accident happened in Stanislaus County and Sergio Delecce was then in Fresno County. While it was alleged that Sergio Delecce was operating the car through his authorized agent this was such an operation as was insured against, and was not an operation within the exclusion clause above mentioned. Not only was an oral contract of insurance shown, but more of the details appear than is usual in such cases and no material element appears lacking.

It is next contended that the court erred in giving some twelve instructions to the jury and in refusing to give an instruction requested by the appellant to the effect that the law which permits the bringing of such an action as this against an insurer applies only to a "policy" of insurance, does not apply to an oral contract of insurance. and that if no policy was issued in this case the verdict must be in favor of the appellant. The appellant concedes that oral contracts of insurance were formerly valid in this state and that there is now no express statute forbidding such contracts. It is argued, however, that the adoption of the Insurance Code in 1934 had the effect of putting all the insurance law in that code and that it contemplates only written contracts of insurance. It may first be observed that while the Insurance Code may have been intended as a codification of all the statutory law in that connection no attempt was made to codify all of the established law, as found in the decisions of the courts and as long applied to previous statutes. In section 22 of the Insurance Code, insurance is defined as a contract without specifying that it must be written, and the definition of insurance and of a policy of insurance has not been substantially changed since 1872. While many of the provisions of the Insurance Code relate to written contracts of insurance, and to what must be done in that connection, none of these discloses an intention that an oral contract of insurance should no longer be recognized in this state. In view of the former established rules and the common practice of insurance companies in dating policies when issued back to the time when application therefor was made to their agents, it is hardly reasonable to suppose that the Legislature, in adopting the Insurance Code, intended to forbid oral contracts of insurance, especially in such a case as this where

an application is made and at least a part of the premium is accepted some days before a policy can be delivered and where, in the usual course, the policy if issued will be dated back. If that is the law, insurance companies are continuing to collect large amounts of premiums covering periods of time when there is no insurance in force. In view of the situation which exists and the long established, and still continued, practice we think any such drastic change in the law is one that not only should be made by the Legislature and not by the courts, but is one that should be clearly expressed and not left to implication. It would serve no useful purpose to review the various sections of the Insurance Code relied upon by the appellant in this connection and which we think are not susceptible to the construction it places upon them. It particularly relies upon section 382, which provides that covering notes may be issued to bind insurance temporarily pending the issuance of a policy. The provision is that such notes may be issued but not that they must be issued in such cases. This section seems to indicate an intention to cover a situation where it is fully understood that the policy itself is not to be issued and not to take effect until a later date, and where it is desired to provide a separate and distinct coverage for the interim. We think that it has no application in a case such as this where it was clearly contemplated that while the formal policy had not yet been issued it was to become effective immediately and the period of the policy, which was to be later issued, was to begin to run at that time.

What we have already said disposes of most of the objections raised to the instructions. ■ It is further argued that one instruction was erroneous in that it was left to the jury to say whether or not Miss Gable had authority to bind the appellant by an oral agreement of insurance. The evidence on this issue was before the jury and we see no error in the instruction. ■ It is argued that in another instruction in the same connection the court assumed and flatly declared that Miss Gable had a conversation with Joe Delecce. In this instruction the court incidentally referred to "the time she had the conversation with Joe Delecce." Joe Delecce had testified that he had two conversations with Miss Gable in August, 1941. Miss Gable first denied that either conversation had occurred, then admitted there was such a conversation on August 23rd, and finally admitted a further telephone

conversation with him but said she thought it occurred in June. Assuming that the instruction could have been more happily worded no possible prejudice appears. We can find no prejudicial error in connection with any of the instructions which are criticized.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied May 3, 1944, and appellant's petition for a hearing by the Supreme Court was denied June 1, 1944. Edmonds, J., voted for a hearing.