[Civ. No. 4405. Fourth Dist. Jan. 29, 1952.]

LYLE DUANE GUIPRE, a Minor, etc., Respondent, v.
KURT HITKE & COMPANY, INC. (a Corporation)
et al., Defendants; REPUBLIC INDEMNITY COM-
PANY OF AMERICA (a Corporation), Appellant.

Flaum & Hecker and Stanley Sevilla for Appellant.

N. H. Smedegaard and Winthrop O. Gordon for Respondent.

GRIFFIN, J.—Plaintiff, by his guardian, brought this action against appellant Republic Indemnity Company of America, and defendants Kurt Hitke and Company, Inc., D. E. Morris, Wilma Oliphant, United Insurers, and Inter-Insurance Exchange, to recover upon plaintiff's claim that defendants, as agents of appellant corporation, orally insured or agreed to insure to plaintiff, effective as of the date of the oral acceptance of such risk, a standard form of insurance for P. L. & P. D., and that defendant United Insurers likewise agreed to issue a collision insurance policy on plaintiff's automobile; that thereafter an accident happened and defendants and appellant, contrary to the terms of the policies, refused to assist in the defense of an action and to pay a judgment rendered against plaintiff.

Plaintiff, at the close of his affirmative case, by the order of the court, elected to proceed against appellant Republic Indemnity Company and defendant United Insurers, and, over their objections, the action was dismissed as to the remaining defendants. A jury returned a verdict resulting in a judgment against appellant for $6,248.02 and against defendant United Insurers for $563. Apparently the latter judgment was satisfied. Republic Indemnity Company appealed.

Plaintiff, then aged 19 years, and a corporal in the United States Marines, arranged to borrow a sum of money from a bank in Balboa to purchase a used car. The bank advised plaintiff of the type of insurance required as a condition to granting the loan. Guipre told his friend Kliewer of this requirement, and Kliewer called defendant Gilmore in Santa Ana, who was a member of the insurance agency firm of Stricklin, Gilmore and Rabun, and who particularly dealt in various kinds of automobile insurance. His company would not handle "substandard risk," such as this one. Gilmore, on February 6, 1948, then phoned defendant Morris in Anaheim, who was an insurance broker and who, since 1947, had been selling P. L. & P. D., as well as other kinds of insurance for different companies, as broker, or through the office of Kurt Hitke and Company, Inc., in Los Angeles, which company was conducting a general insurance business, and was general agent for Republic Indemnity Company as well as

the United Insurers. A major portion of Morris' business was with Kurt Hitke and Company, Inc., in connection with substandard business, and his business was being conducted with them over the phone.

At the trial Gilmore testified generally that due to the fact that his company did not write substandard policies, he called the office of defendant Morris, as he had done on previous occasions, about placing such a policy and gave one of the assistants the required information; that the next day he called Morris and asked him if he had obtained the necessary coverage and Morris stated that he had; that he gave him such additional information as was suggested, such as the car number, amount Guipre borrowed and to whom the loss, if any, was payable; that he specifically asked Morris if the "risk could be bound" (immediately); that he answered "Yes," it would be effective immediately; that Morris said he had called (Kurt Hitke and Company, Inc.) and that they had said they would "take it"; that Kurt Hitke and Company, Inc., asked him to send the additional information to it on a written application form. (This form was placed in evidence and was addressed to "Kurt Hitke Co.") He then testified that on other occasions he had called Morris when he wanted to place a risk of this type and followed this same procedure, and after presenting the question as to whether such a policy would issue, Morris would quote the rates and say: "It is bound" or "You have it," or words to that effect and the policy would be effective as of the date of such phone call ratification, and that subsequently a policy would be forwarded to him, issued as of the date of the call; that these policies were written by the appellant Republic Indemnity Company because "it was the only type of insurance that we could place with Republic, substandard insurance"; that it was the policy of that company to write the insurance and if, after further investigation it desired to do so, it would cancel it and return the premium. He then stated that after this conversation with Morris on February 7th he gave the premium rate figures, amounting to $121, (which was about double the ordinary rate) to Guipre, and told him Morris had advised him the "coverage was in effect." He then stated that on February 14th, he received a call about an accident. He testified that he then called Morris and told him the particulars and asked him to contact the necessary adjusting service; that Morris said he would, and made no mention of the fact that the applicant was not

covered. He stated that several days later, Morris called him and said that he had been advised that there was no coverage.

Guipre testified he contacted Gilmore about the policy the bank required before the loan would be made; that while in his office Gilmore phoned to Morris; that after the conversation Gilmore gave him the figures and the cost of the insurance; that he gave these figures to the bank and the loan was made after deducting $121 for insurance premiums; that he bought the car and returned to the bank with the pink slip; that the accident happened on the 14th; that a report of it was made and demand was made upon Gilmore to have the insurance company furnish attorneys to defend the suit; that he was told the company refused his request; that similar demand was made on Kurt Hitke and Company, Inc., as well as Morris and that he employed his own attorneys and judgment went against him in the case.

Defendant Morris, called under section 2055 of the Code of Civil Procedure, testified that he placed the name Kurt Hitke and Company, Inc., on the top line of the application blank (Exhibit A) and mailed it to the company, which application showed the coverage and amount of premium on each item, as given to him by that company through defendant Miss Oliphant; that the sum total was $121. He then stated in his deposition that on these substandard risks, prior to this occasion, John D. Lynch, vice president of Kurt Hitke and Company, Inc., had told him that he (Lynch) would write him such a risk "over the phone" and that "we bound" lots of them over the phone; and that usually a written application would follow; that he would call the Kurt Hitke office and either Mr. Lynch or Miss Oliphant would take the particulars of the risk and give a rating. He then testified that this was what was done in the instant case; that Miss Oliphant told him "she would write it"; to "send it in on a written application"; (the policy period mentioned in the written application was from February 7, 1948, to February 7, 1949) ; that he then got in touch with Mr. Gilmore. Subsequently, however, he stated in his deposition that Kurt Hitke and Company, Inc., gave him a rate without saying it would write it "because all the minors had to go in to the company in person for approval"; that this was the absolute direction to him; that he never knew what company, if any, was going to write it; that in the instant case no company was mentioned; and that he knew Kurt Hitke and Company, Inc., represented several companies. However, in

a recorded telephone conversation with Gilmore, it shows that in this particular instance Morris did tell Gilmore that Miss Oliphant "told him that they would take it," and "for us to submit it on a written application." He also told Gilmore that he could not "bind" the risk, but in order to do so he first had to call Kurt Hitke and Company, Inc.; that that was why he called him, to "let him bind it"; that he could not understand their attitude because "they are bound to be stuck for it." In this conversation Morris' testimony was impeached in many ways. Morris, at that time, was a licensed broker and had an appointment as agent for the United Insurers. He never wrote any business for them except through Kurt Hitke and Company, Inc. · On cross-examination Morris stated that Lynch admitted that Miss Oliphant had told Lynch about the call and that she told Morris "They would write it," but Lynch told him that "they were unable to place it at that time." Morris' books show, in his account, "that a number of the policies he had obtained through Kurt Hitke & Co., Inc. had been canceled and others rejected after the policies had been written"; that among them was one issued by the Republic Indemnity Company. He testified that nearly all of his business with Kurt Hitke and Company, Inc., was substandard business, and that the policies, when issued, were delivered through Kurt Hitke and Company, Inc.

Miss Oliphant testified she received applications for insurance on various forms from Mr. Morris; that if Mr. Lynch instructed her that the United Insurers would accept the collision risk, the practice was to then send that company a copy of the application, and the same rule was true as to the Republic Indemnity Company in reference to P. L. & P. D. insurance. She denied telling Morris "we could write it," or anything of that nature. She stated she kept books and acted in a secretarial capacity for Mr. Lynch, took such applications as here involved over the phone, and gave "estimates" of rates, but that she had no authority to bind the risk without taking it up with Mr. Lynch; that many policies were canceled after their issuance upon a flat rate, i.e., "returning the full amount of premium if it had been received" (because the particular company did not want to stay on the risk); that this was often done after the company read an inspection report as to the risk. She stated she knew Mr. Lynch surcharged minors and service men, at 100 per cent; that after the accident she remembered that there was

a discussion in the office whether the Guipre policy had been written. She then remarked that her company could not place any surcharge business with Republic Indemnity Company or United Insurers, but on cross-examination she testified she believed they did later write such business.

An insurance agent and broker of many years' experience testified in respect to the custom of insurance agents "binding" risks of automobile insurance and as to the meaning of the words "We will write it," that these words mean that the coverage is effective immediately; that it is not ordinarily disclosed what company is to carry it; that that is usually determined by the agent where he is general agent for more than one company, and it is usually written by the company designated by the agent; that if a loss occurs before the policy is issued he charges the loss to the company he selected; that if he is only a broker for a company he cannot bind it, but if he is an agent for it he has binding authority; that if clerks in an office of an authorized agent accept applications for insurance and give rates, they are generally considered as representing the agent in so doing; and that on occasions, in his absence, they have "bound" the risk for the general agent, as to general automobile insurance, even on substandard risks; that it is the custom to accept the word of the agent as making a binding contract when he says "we will write it."

At this point plaintiff offered in evidence a substandard policy issued by the appellant company for another service man in August, 1947, for P. L. & P. D., which was obtained by Morris on a commission-splitting basis, for the purpose of showing that the company did issue such a policy as indicated, at that time. Thereafter, plaintiff rested his case. Motions for nonsuit were denied. Plaintiff elected to proceed only as against the United Insurers and Republic Indemnity Company.

Defendant produced a witness from the bank who testified that, in reference to plaintiff's statement as to the car being covered, a check for $121, the amount of the premiums indicated, was forwarded to Stricklin, Gilmore & Rabun Company, which firm later returned it to the bank. The bank turned these proceeds back to the plaintiff to pay his attorney's fees.

Thereafter, Lynch testified that he had complete charge of his office; that his secretary had no authority to bind him as agent for any company; that the Republic Indemnity Company had its own underwriting department in charge of

a Mr. Mapes in Los Angeles; that he had been instructed by Mapes to issue only P. L. & P. D., and after January, 1948, only manual rates were to be employed and no coverage was to be issued to minors; and that he so informed Morris. He testified generally as to the custom of receiving applications; that upon receipt they would call the various companies to see if they would carry the risk and that all companies for which he accepted business required a signed application before issuing a policy, except one of the companies not here involved. A considerable number of exhibits were received in evidence in an endeavor to substantiate this policy. He then testified that Morris told him that he knew that neither he nor Kurt Hitke and Company, Inc., could "bind" the risk by telephone and that he told Gilmore it could not be "bound" because minors' applications had to be sent to the company for approval; that he received no money on account of the claimed Guipre risk; that he never did "bind" a risk in his office; that he was the designated agent for the United Insurers and for the Republic Indemnity Company and that he was only a broker as to the other agencies.

Mr. Mapes, the underwriter, was called and testified that Lqnch approached him sometime before March 1st, in regard to writing substandard business; that he told him that the idea had a lot of merit; that if and when they accepted that class of business they were going to publish rate books, etc., and that until that time they would not accept any of that business from him; that in the meantime he was not to "bind" them on any risk that was not standard; that after March 1st they did accept that type of risk and sent out a notice of higher premium rate.

On rebuttal, plaintiff produced Mr. Stricklin and Mr. Rabun, who testified that they went to Mr. Mapes' office about the time of this Guipre controversy to see if they could act as agent for his company in issuing substandard business; that he told them that Kurt Hitke and Company, Inc., had a contract for all substandard business with them and that he preferred any subagent's appointments be made with that company for such business; that he then said about the Guipre policy, "There was a policy issued and torn up." Mapes denied this latter part of the conversation.

Appellant concedes that oral contracts of insurance are enforceable. (*Smith* v. *Massachusetts Bonding & Ins. Co.*, 71 Cal.App. 661 [236 P. 176]; *K. C. Working C. Co.* v. *Eureka-Security F. & M. Ins. Co.*, 82 Cal.App.2d 120 [185 P.2d 832].)

The cases hold that in the absence of evidence to the contrary, the effective date of insurance is the date when acceptance is made. (*Marderosian* v. *National Casualty Co.*, 96 Cal.App. 295 [273 P. 1093] ; *Ferrar* v. *Western Assur. Co.*, 30 Cal.App. 489 [159 P. 609, 611].)

It is argued that the evidence here is insufficient to support the implied finding of the jury that appellant company did, by its own acts or the acts of its authorized agent, enter into such a contract; that Morris was not an agent of appellant and could not bind the appellant company to an oral contract of insurance with Guipre; that although Kurt Hitke and Company, Inc., was an agent of appellant company, it did not have actual or ostensible authority to bind it to such a contract; and even though it may be assumed that it did have such authority, the elements of an oral binding contract of insurance were not present.

We have here a lay person making a regular application for insurance coverage on his automobile to an insurance agent who, in accordance with the adopted custom, informed him that his automobile was covered, according to the requirements of the loaning agency. He was informed that such coverage was immediate, as of the date of the oral ratification by such agent. Under section 335, subdivision (b) of the Insurance Code, each party to a contract of insurance is bound to know "All the general usages of trade." ■ When there is a known usage of trade, persons carrying on that trade are deemed to have contracted in reference to the usage, unless the contrary appears; and the usage forms a part of the contract. ■ Evidence of usage is always admissible to supply a deficiency or as a means of interpretation where it does not alter or vary the terms of the contract. (*Watson Land Co.* v. *Rio Grande Oil Co.*, 61 Cal.App.2d 269, 272 [142 P.2d 950].)

If automobile liability insurance companies and agencies are going to deviate from or alter the general practice of accepting oral applications for such insurance by authorized agents and require written applications for such policies and a previous approval by the company itself before the issuance of such policies and before liability shall attach, the burden to examine into the changed policy or limited authorization of such agent should not be cast upon the applicant. It is a matter of common knowledge and experience that insurance agencies do represent several companies in the automobile insurance field and that an oral application to such an agency

is ordinarily considered accepted when approved by such agent, and the responsibility of selecting the company to cover the risk is with such agent. Under these conditions, in case of a loss, the applicant should not be made to suffer by reason of some undisclosed agreement or change of policy between the agent and the company as to the method of procedure pertaining to such coverage, particularly where the company allows its authorized agent to transact such business in accordance with the custom mentioned.

In *Wheaton* v. *North British & M. Ins. Co.*, 76 Cal. 415, [18 P. 758, 9 Am.St.Rep. 216], it was held that an insurance company doing business through the medium of agents is responsible for their acts within the general scope of the business entrusted to their care. And in *Marderosian* v. *National Casualty Co.*, *supra*, at page 303, it is said:

''Where the assured has no notice of any limitation on the powers of the general agent, any act within the scope of the insurance business is binding on the insurance company, although it is in fact in violation of the agent's authority.'' (See, also, *Cronin* v. *Coyle*, 6 Cal.App.2d 205, 212 [44 P.2d 385].)

The evidence is sufficient to show that Miss Oliphant did, in fact, inform Morris that Kurt Hitke and Company, Inc., would cover the risk described, as of the date of such oral application, and did quote the exact rate of premium required for such coverage in some company; that she had pursued this method of procedure on other occasions and a policy of insurance followed. Notwithstanding Lynch's testimony to the contrary, the surrounding circumstances indicate an authorization by him for her to act as his agent in this respect. As pointed out by respondent, in modern practice much of the business of the agency insurance company is conducted over the telephone. ■ New insurance in various forms, as well as increased coverage on existing insurance is commonly ordered by telephone and if an application is accepted by a clerk who undertakes to speak for the agent, an enforceable insurance contract results. (*Harris* v. *Sachse*, 160 Pa.Super. 607 [52 A.2d 375, 379]. See, also, *Barone* v. *Aetna Life Ins. Co.*, 260 N.Y. 410 [183 N.E. 900] ; *Allen* v. *St. Louis Ins. Co.*, 85 N.Y. 473 ; *Bodine* v. *Exchange Fire Ins. Co.*, 51 N.Y. 117 [10 Am.Rep. 566] ; *Security Ins. Co.* v. *Van Norman*, 195 Ark. 200 [111 S.W.2d 561] ; *International Trust Co.* v. *Norwich Union Fire Ins. Soc.*, 71 F. 81 [17 C.C.A. 608].)

Although section 1671.2 of the Insurance Code provides

16

that certain employees are not deemed agents, *Goldstone* v. *Columbia Life & Tr. Co.*, 33 Cal.App. 119 [164 P. 416], holds that such statutory provision as to agents does not change the rule of law as to principal and agent between the company and the policyholder. ██ The question of Miss Oliphant's ostensible agency was a jury question and was apparently submitted to the jury under proper instructions. (*Stanley* v. *Columbia Casualty Co.*, 63 Cal.App.2d 724, 732 [147 P.2d 627].)

██ As pointed out, Kurt Hitke and Company, Inc., was general agent for the Republic Indemnity Company and the United Insurers, and broker for several other companies. It had, at all times, ostensible authority to contract for automobile liability insurance for the appellant company. The jury had the right under the evidence here presented, to believe or disbelieve appellant's evidence that Kurt Hitke and Company, Inc., was not authorized to write substandard policies for it, or bind it in respect to such insurance. Morris did state that he did principally substandard business with Kurt Hitke and Company, Inc. He produced his book account with the company which clearly showed a considerable amount of business transacted with it and the appellant had issued many of the policies indicated. It also showed that several of these policies were canceled by that company after the policy was issued and the entire premium returned. This fairly well indicates that the jury was justified in disbelieving appellant's testimony in respect to the claimed limited authority given by the appellant company to Kurt Hitke and Company, Inc. The jury had all of the evidence on this subject before it, and the question whether that company had authority, either actual or ostensible, was for the jury to determine. (*Ames* v. *Auto Owners' Ins. Co.*, 225 Mich. 44 [195 N.W. 686]; *Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 246, 261 [23 P. 869, 17 Am.St.Rep. 233].)

The law has been stated to be that the secret limitations of an agent's power do not prevent a party from dealing with the agent to the full extent of his apparent authority and the parties dealing with an insurance agent having apparent authority to enter into a contract of insurance cannot be affected by special instructions to the contrary. (See *Wheaton* v. *North British & M. Ins. Co.*, 76 Cal. 415, 420 [18 P. 758, 9 Am.St.Rep. 216]; *Browning* v. *McNear*, 145 Cal. 272, 281 [78 P. 722]; *Farnum* v. *Phoenix Ins. Co., supra*; *Oderkirk* v. *Fargo*, 61 Hun. (N.Y.) 418 [16 N.Y.S. 220].)

Appellant relies principally upon *K. C. Working C. Co.* v. *Eureka-Security F. & M. Ins. Co.*, 82 Cal.App.2d 120 [185 P.2d 832], where the general agent represented several companies writing the same type of *fire* insurance. There it was held that before any particular company could be bound, the minds of the parties must have met on the identity of the person with whom they were dealing; and that there was no enforceable contract of insurance with the insured. There, the agent, who represented several companies, failed to designate one of the companies before the loss occurred. There is a factual difference between that case and the instant case. There is evidence here which shows that Kurt Hitke and Company, Inc., was general agent for only one automobile insurance company writing P. L. and P. D. insurance; that appellant Republic Indemnity Company did in fact write the policy, and after the accident happened it was torn up by that company. The jury had the right to believe this evidence. The custom of covering automobile liability insurance was shown to be somewhat different from that involved in the cited case. There, no premium amount was indicated to the insured and no payment was made for the policy. Viewing the evidence in its most favorable light in support of the judgment, as we must do, it shows that every necessary detail had been covered by the parties except the matter of delivering the policy.

In *Marderosian* v. *National Casualty Co.*, supra, it was held that under such circumstances the contract of insurance is deemed effective from the date of the oral acceptance of the risk, although a loss occurs before the policy is actually delivered.

Many of the authorities cited by appellant, such as *Toth* v. *Metropolitan Life Ins. Co.*, 123 Cal.App. 185 [11 P.2d 94]; and *O'Brien* v. *New Zealand Ins. Co.*, 108 Cal. 227 [41 P. 298], involved life or fire insurance contracts based on a written application and in which it was provided that there was no coverage until the written application was accepted by the company.

We conclude that the evidence is sufficient to support the judgment.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied February 26, 1952.